FILED
8/10/2020 3:13 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Debra Clark DEPUTY

CAUSE NO. DC-20-01121

| | | |
|---|---|---|
| ALAN SEVADJIAN, | § | 14th JUDICIAL DISTRICT COURT |
| Plaintiff, | § | |
| v. | § | |
| TEXAS DEPARTMENT OF MOTOR VEHICLES, | § | |
| Defendant. | § | |
| *CONSOLIDATED WITH* | § | OF THE STATE OF TEXAS |
| FRANCK RADENNE, | § | |
| Plaintiff, | § | |
| v. | § | |
| DUNTOV MOTOR COMPANY, LLC, ALAN SEVADJIAN, AND EDWARD SEVADJIAN, | § | |
| Defendants. | § | IN DALLAS COUNTY |

**PLAINTIFF'S SECOND AMENDED PETITION**

Plaintiff Franck Radenne ("Franck" or "Plaintiff") files his Second Amended Petition ("Petition") against Defendants Duntov Motor Company, LLC ("Duntov"), Alan Sevadjian ("Alan"), and Edward Sevadjian ("Edward") (collectively, "Defendants"), and respectfully states as follows:

## I.
## SUMMARY

Defendants met, manipulated and defrauded Franck out of a substantial amount of money. Alan and Edward (the "Sevadjians") purportedly sold Franck—a French citizen who resides overseas—a 1968 Corvette, purportedly made him the "legal owner" of the car, and swindled him

EXHIBIT U

Duntov 000107

PLAINTIFF'S SECOND AMENDED PETITION    PAGE 1

out of money to modify the car—a car they did not and do not have a legal title for. In fact, the "Corvette" they "sold" Franck was never manufactured by General Motors.

After more than a year of providing constant funding to modify the car and receiving endless excuses for the failure to deliver the car, Plaintiff discovered Defendants' scheme becasue Defendants could not supply a title or a car with a manufacturer's Vehicle Identification Number (the "VIN") identified in the Bill of Sale. Consequently, Plaintiff institutes this action to recover all available damages, plus interest, attorneys' fees, litigation costs, exemplary damages, and all other relief available under Texas law.

## II.
## DISCOVERY PLAN AND RULE 47 DISCLOSURE

1. Plaintiff intends to conduct discovery under Level 3 of the Texas Rules of Civil Procedure.

2. Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiff discloses that he currently seeks monetary relief over $200,000.00 but not more than $1,000,000.00.

## III.
## PARTIES

3. Plaintiff is French citizen who resides in Switzerland.

4. Duntov is a Texas limited liability company doing business in Texas with its principal place of business at 13906-C Denton Drive, Farmers Branch, Texas 75234, located in Dallas County. Duntov has appeared in this lawsuit.

5. Alan Sevadjian is an individual and has appeared in this lawsuit.

6. Edward Sevadjian is an individual and has appeared in this lawsuit.

## IV.
## JURISDICTION AND VENUE

7. Venue is proper in Dallas County, Texas under the Texas Civil Practice and Remedies Code section 15.002(a) because all or a substantial part of the events giving rise to Plaintiff's causes of action occurred in Dallas County, Texas. Furthermore, this Court has jurisdiction because: (1) Plaintiff's damages are within the jurisdictional limits of this Court; and (2) the occurrence giving rise to this action occurred within the State of Texas.

## V.
## STATEMENT OF FACTS

**A.  Defendants Reel In Their Mark.**

8. Plaintiff is a citizen of France and a vintage racing enthusiast and driver.

9. Duntov is a company involved in manufacturing, racing and restoring vintage Corvettes. The Sevadjians operate Duntov as their alter ego. Duntov claims to have the exclusive license from General Motors to manufacture the continuation authentic 1963 Corvette Grand Sport. It advertises itself as a company that "offer[s] every part required to complete a chassis overhaul on your 63-82 Corvette;" has "in-house capacity to make all components, from frame to body to engines;" and "provide[s] Corvette racecar preparation and trackside support services for serious vintage Corvette racers." They purport to have won World Challenge and SCCA National Championships and "represent the state of the art in vintage Corvette race-prep."

10. In 2018, Franck contacted Defendants through email and by phone. Franck sought out Defendants for modifications to a Corvette that he intended to buy in Europe, have modified, and then drive on-road and in races through FIA European historic racing.

11. During the communications regarding modification work, Alan suggested that Franck purchase what Alan said was an "in stock" 1969 Corvette Defendants modified but

**Duntov 000109**

abandoned by its owner (the first of many false statements). Alan stated Defendants had a title for the car and it could be modified to Franck's specifications if he purchased it.

12. Alan wrote on May 2, 2018:

> We have a 69 Corvette with a title in stock with a Duntov built roll cage already installed. It was a project we started a few years ago, but the owner got sick, abandoned the project, and transferred ownership to us rather than pay his bill. That would be a great place to start – you wouldn't have to ship us a car. The labor budget to complete this car to a 'running stage' but still unfinished would be about 400-700 hours, depending on the exact definition of 'running stage'. We had over $25,000 in the project before it was abandoned. You could start with this car for $10,000. It is on a storage lift now. If you would like, I will have it moved down so it can be photographed.

Later discussions identify the referenced car as a 1968 Corvette when Alan sent pictures of the vehicle to Franck on May 16, 2018.

13. In fact, there was never an "in stock" 1968 Corvette titled to Duntov. Defendants had, but did not have a legal title for, a vehicle made of piece and parts of several different year model cars that was and remains officially titled to Omer Hanna. In 2012, Mr. Hanna sought and obtained a Reissued VIN and title from the State of Texas. Defendants did not disclose any of this to Franck. Instead, Defendants misrepresented the legal identification, manufacturer, provenance, exportability, and the transferability of "legal ownership," among other things, all with the intention that Franck would rely on those intentional misrepresentations to his detriment and to the benefit of Defendants.

**B. The Bait And Switch To A Fake.**

14. Defendants told Franck in writing that on payment of the car portion of their estimate—$29,553.92 (the "Purchase Price")—Franck would be the ***"legal owner"*** of the car. In order to have a road-legal car that could also be raced in the FIA European vintage car circuit, as Franck desired, the car required substantial modifications, which Defendants would perform to an automobile legally owned by Franck for the total estimated cost of $74,506.48.

Duntov 000110

15. In early 2018, Defendants sent a proposed Bill of Sale to Franck. Franck pointed out that the VIN identified in thet Bill of Sale could not be correct because the seventh digit was a "**5**" and not an "**S**." The VIN's seventh digit denotes the physical location where the car was built and should be a letter, not a number.

16. After Franck pointed this out, the Defendants had the opportunity to disclose that the body of the car they were selling had a Texas Reissued VIN plate affixed to the door with a 5 as the seventh digit of the VIN number (the "5-VIN").



17. Instead, Defendants switched the "5" to an "S" on the June 8, 2018 Bill of Sale (the "Bill of Sale") claiming the "5" was Alan's mistake. The Bill of Sale then stated Duntov was selling Franck a 1968 Chevrolet Corvette bearing VIN 194678*S*422741 (the "S-VIN" or the "Corvette"). Despite knowing the S-VIN was not located anywhere on the car or on Hanna's title (in Defendants' possession), the Defendants changed the the information on the Bill of Sale without disclosure to Franck.

18. The fraudulent misrepresentations did not stop there. Before signing the Bill of Sale, Franck requested confirmation of the presence of the S-VIN *on the chassis*:

> On Jun 20, 2018, at 13:48, franck radenne <radennef@yahoo.com> wrote:
>
> Hi Alan,
>
> Me again, sorry.
> Can you confirm the address of your bank: 1445 ROSS AVENUE - 75202 DALLAS
> Can you also confirm the presence VIN on the back of the chassis?
> Thanks!
>
> Franck

19.     Because they were aware that Franck would not buy the hodge-podge of car parts without a matching manufacturer-issued VIN on both the body and the chassis, Defendants doubled down on the misrepresentation by confirming the S-VIN was on the chassis (and it never was):

> On Wednesday, June 20, 2018, 9:06:57 PM GMT+2, Alan Sevadjian <alan@duntovmotors.com> wrote:
>
> Yes, confirming both.

20.     Relying on Defendants' misrepresentations, including that the S-VIN was stamped on the frame, Franck signed the Bill of Sale less than twelve hours later and made the initial payment of $29,553.92. According to the Terms and Conditions Defendants supplied with the Bill of Sale ("Terms and Conditions"), Franck's payment made him the legal owner of the S-VIN Corvette.

21.     In fact, Defendants have never possessed a valid, negotiable Certificate of Title to a car with the S-VIN; nor have the Defendants ever transferred title of any vehicle to Franck.

**C.     The Truth.**

22.     Two significant pieces of information now reveal the truth: even if Defendants could deliver a car with an S-VIN—and they cannot—it is a fake. First, GM never manufactured a car with the S-VIN. The National Insurance Crime Bureau and the National Corvette Restorers

Duntov 000112

Society both report that General Motors did not build a 1968 Corvette *convertible* with the S-VIN (where the fourth VIN digit would be a "6" as it is in the 5-VIN) but did build a 1968 Corvette *coupe* on June 17, 1968 bearing VIN 194**3**7S422741, which was sold new in Bethesda, Maryland. Second, it is impossible for a 1970s-model frame to legally have a VIN stamp purportedly from 1968.

23. Alan supplied the details of this second point. Referring to the below picture (which Alan supplied to Franck before Franck executed the Bill of Sale), Alan testified on June 16, 2020 that he had a sudden epiphany over his lunch that the frame depicted in the photo was not a 1968 frame at all but was actually a 1970s-model frame:

> [i]n the back of the frame, it's got a big, square, open box, and a '69 or a '68 Corvette – a '68 Corvette through '73 Corvette has a taper right here (indicating). It's tapered up like that, and it has a little bitty opening here. But in '74, they started making them square like this . . . . I don't think it's a '74 because I think there's some holes on the side of a '74 frame. I believe the frame is a '75 or '76 or possibly a '77.



Duntov 000113

**PLAINTIFF'S SECOND AMENDED PETITION**   PAGE 7

### D. Defendants Deploy Their Scheme To Unload A Fake And Deliver … Nothing.

24. The Terms and Conditions state that Defendants "will make every effort to complete the car and have it registered and race ready for the event at Circuit of the Americas [in Austin, Texas], **November 1-4, 2018**" (emphasis added).

25. On July 18, 2018, Alan told Plaintiff that Duntov will "work full-time every day and will continue until it is finished."

26. Defendants did not deliver the car for the 2018 Circuit of the Americas event (or even for the November 2019 Circuit of the Americas event).

27. After becoming the "legal owner" of the Corvette, Franck made progress payments totaling approximately $70,000.00 for the modifications purportedly being made to his Corvette.

28. On February 8, 2019, Plaintiff came to America to review the progress on the several-months overdue delivery. For the first time, Franck saw the car Defendants represented as the Corvette he "legally owned."

29. During Plaintiff's visit, Franck looked for ***but could not find*** the VIN plate on the windshield or the VIN stamp on any visible part of the frame. Instead, he saw a newly created VIN plate with the S-VIN (a number GM never issued) on Edward's office desk. Edward stated that the Sevadjians intended to affix this "new proper GM VIN" that Alan ordered from the internet to the car's windshield. This new plate was not issued by the State of Texas and the plate style is not the 1968 style, but from a later period. Defendants promised to get the VIN issue resolved.

30. When questioned, Defendants continued the misrepresentations and half-truths. Alan stated on February 15, 2019:

**Duntov 000114**

The car lacked a GM VIN number because the windshield frame to which it was attached had been removed in preparation for racing. The owner at the time had lost the title, and the procedure to acquire a new title involved having a State Trooper examine the vehicle, get the serial number off of the frame and create a new VIN plate with that number and affix it to the car. Since there was no windshield post, it was affixed to the hinge pillar, drivers side (see below).



The factory VIN number is stamped on top of the frame rail on the driver's side in the middle of the door opening. The officer made an error and an S' was recorded as a '5'. I did a search of the VIN number with a 5 and also with an S, and there is no issue with the title either way. I have had a new proper GM VIN number made that shows the S' instead of the '5'.

31.     Significantly, Alan send two pictures of the door frame with paint on the alleged VIN plate. The paint obscured evidence of how any actual reissuance of a VIN would look. And, such evidence would have given Defendants' scheme away. If authentic, the plate beneath the paint looks like this:



32.     If Franck had seen the "Reassigned" VIN plate, he would have immediately been alerted to Defendants' fraud. Instead, the plate was covered with paint and Alan doubled down on his earlier misrepresentations by restating that there is a *factory VIN on top of the frame rail*." Alan created the false impression that the a legally reassigned VIN plate looks exactly like an

Duntov 000115

original and that the (nonexistent) VIN on the chassis was placed there by the manufacturer and that the two matched.

33. Defendants promised to legally correct the *disclosed* problems.

34. Over the next months, Franck made repeated requests for confirmation that Defendants had legally corrected the disclosed problems. However, Franck was unaware that GM had never issued the S-VIN or that the frame was a 1970s-era frame.

35. As Franck's demands increased, Alan stopped communicating with Plaintiff, causing Plaintiff to reach out to Edward, who reported that he "believed the issue was fixed." After continually being pressed for a copy of the paperwork that "fixed" the issue, in November 2019, Defendants provided a copy of a June 29, 2012 Corrected Order filed in Brown County, Texas (the "Corrected Order")—a seven-year-old document that did not cure any of the issues identified by Plaintiff. In fact, it made them worse.

36. The Corrected Order states that the contemplated vehicle has the 5-VIN on the frame/chassis, but not on the body. Further, the Corrected Order indicates the title owner is Omer Hanna. In contrast, Duntov's vehicle had the Reassigned 5-VIN plate *on the body but there has been no evidence that there is any VIN, at all, on the frame.* Based on Alan's revelation that the frame is a 1970s-vintage frame and the fact that GM manufactured the S-VIN, it is impossible for Alan to have confirmed (as he repeatedly states he did) that the S-VIN is stamped on the frame.

37. Simply put, General Motors did not manufacture the car Defendants sold to Franck— it is an amalgamation of pieces and parts with a fictitious VIN.

E. **DEMANDS MADE TO REMEDY THE FRAUD**

38. Despite written demand, Defendants have failed to provide evidence of Franck's legal ownership of the Corvette identified in the Bill of Sale.

Duntov 000116

39. Despite making progress payments for the modifications—bringing the total payments to $94,553.92—more than fourteen months after the initial delivery goal, Defendants had not delivered the Corvette "complete and street legal with state inspection sticker, license plate, roll cage, race prepared [chassis], in primer[,]" with a spare set of wheels as was the contractual obligation. In fact, Defendants have delivered nothing at all to Plaintiff.

40. Despite almost a year of requests for reasonable assurance that Defendants could provide title, Defendants have failed to provide any reasonable assurances and have repudiated the Bill of Sale they fraudulently induced.

41. Despite legal demand, Defendants have failed to provide the goods Franck purchased in a commercially reasonable time.

## VI.
## CAUSES OF ACTION

### COUNT I – Breach of Contract
(Against Duntov)

42. The preceding paragraphs are incorporated herein fully by reference.

43. Defendants entered into a valid contract, as evidenced by the Bill of Sale, with Plaintiff.

44. Plaintiff fully performed his obligations under the contract.

45. Defendants materially breached their obligations under the contract by, among other things, failing to deliver the Corvette.

46. As a direct and proximate cause of Defendants' breach of their contractual obligations, Plaintiff suffered damages at least in the amount of $94,553.92, as set forth previously.

47. All just and lawful offsets, credits, and payments have been applied to the amounts claimed.

**Duntov 000117**

48. Further, Plaintiff has been forced to prosecute this action to obtain the just amounts due, and is therefore entitled to attorneys' fees and interest pursuant to Texas Civil Practice and Remedies Code § 38.001, *et seq*.

49. All conditions precedent for recovery of breach of contract and attorneys' fees have been performed, have occurred, or have been waived.

**COUNT II – Breach of Warranties**
(Against All Defendants)

50. The preceding paragraphs are incorporated herein fully by reference.

51. Duntov, the purported seller, provided statutory and common-law warranties, including an express and an implied statutory warranty of: title; merchantability; and fitness for a particular purpose.

52. Defendants provided a common-law express warranty for service through the express written promise to modify the Corvette to a registered and race-ready condition. Defendants made some modifications to a car, but not to the Corvette.

53. Defendants made express representations about the Corvette's title and use of the Corvette as a racing car ability to race the Corvette.

54. Defendants' fraud renders any alleged disclaimer of a warranty ineffective.

55. Defendants' representations were a basis of the bargain.

56. Defendants' conduct warranted that services would be provided to the Corvette of which Franck "was the legal owner." Defendants have not provided services to any such car in breach of the warranty.

57. Defendants warranted possession of title to the Corvette, which they did not have.

58. Accordingly, Plaintiff seeks actual damages, restitution, attorneys' fees, pre- and post-judgment interest at the highest rates allowed by law, and costs of court.

**Duntov 000118**

### COUNT III – Deceptive Trade Practices Act (TEX. BUS. & COM. CODE § 17.01, *et seq.*)
(Against All Defendants)

59. The preceding paragraphs are incorporated herein fully by reference.

60. Plaintiff is a consumer pursuant to the Deceptive Trade Practices Act ("DTPA") because Plaintiff is an individual who sought to purchase a vehicle.

61. Defendants may be sued under the DTPA because they are persons who, by misleading Plaintiff to believe that (1) Duntov owned the Corvette; (2) Franck would be the "legal owner" of the car on payment; and (3) the Corvette, after modification, would be registered and race-ready, committed deceptive acts in connection with Plaintiff's purchase of the Corvette.

62. Plaintiff relied on Defendants' deceptive acts to his detriment.

63. Defendants breached implied and express warranty of title, merchantability, and fitness for a particular purpose, and the common-law express warranty of services.

64. Defendants acted knowingly or intentionally when they fraudulently induced Plaintiff and breached warranties associated with the sale of goods and services.

65. Defendants' conduct was unconscionable.

66. As a result, Plaintiff suffered economic and mental-anguish damages.

67. Accordingly, Plaintiff seeks actual damages and treble damages, attorneys' fees, pre- and post-judgment interest at the highest rates allowed by law, and costs of court.

### COUNT IV – Common Law Fraud
(Against All Defendants)

68. The preceding paragraphs are incorporated herein fully by reference.

69. Defendants made false and material representations to Plaintiff and omitted material fact which they had a duty to disclose and failed to correct factual statements they knew

**Duntov 000119**

or learned were false regarding the Corvette. Defendants fraudulently induced Plaintiff in order to secure Plaintiff's purchase of a vehicle. Defendants continue to benefit directly from their fraud.

70. At the time Defendants made these representations, Defendants knew that the representations were false or made the representations recklessly without knowledge of their truth.

71. Defendants made these material misrepresentations with the intent that Plaintiff act on them by, among other things, purchasing a vehicle, purported to be the Corvette. Plaintiff relied on Defendants' representations when he entered into the agreement to buy the Corvette from Defendants. Plaintiff also relied on the representations and omissions when he agreed to have Defendants complete the Project to make the Corvette "road legal" and "race ready."

72. Plaintiff further shows that Defendants concealed or failed to disclose material facts within Defendants' knowledge which, at the time, Defendants knew that Plaintiff did not have knowledge of, and about which Plaintiff did not have an equal opportunity to discover the truth, including, but not limited to, the "true identity" of the vehicle Franck purchased.

73. Plaintiff actually and justifiably relied on these representations and material omissions.

74. Accordingly, Plaintiff seeks actual damages, exemplary damages, pre- and post-judgment interest at the highest rates allowed by law, and costs of court. Plaintiff also requests that the Court place a constructive trust on the vehicle and the funds Defendants obtained as a result of their fraud.

### COUNT V – Theft Liability Act
(Against All Defendants)

75. The preceding paragraphs are incorporated herein fully by reference.

**Duntov 000120**

76. Defendants unlawfully stole Plaintiff's funds in their intentional scheme to deprive Plaintiff of his personal property and on information and belief by tampering with the serial number on the vehicle.

77. Defendants intentionally deprived Plaintiff of his property with a value of more than $30,000.00.

78. Plaintiff was damaged and seeks to recover his actual damages, additional damages, exemplary damages to which caps do not apply, attorneys' fees, pre and post-judgment interest at the highest rates allowed by law, and costs of court.

### COUNT VI – Negligent Misrepresentation
(Against All Defendants)

79. The preceding paragraphs are incorporated herein fully by reference.

80. Defendants made representations and failed to disclose facts to Plaintiff to induce him to purchase a vehicle and hire Defendants to make said vehicle "road legal" and "race ready."

81. With regard to the purchase of the vehicle, Defendants supplied false information to Plaintiff regarding the "true identity" of the vehicle Plaintiff purchased. Defendants also misrepresented the amount of time it would take to have said vehicle "race ready."

82. Defendants did not exercise reasonable case or competence in making these representations and/or knew that the representations they made were false.

83. Plaintiff relied on the representations by, among other things, deciding to purchase the purported Corvette and hiring Defendants to make said vehicle "road legal" and "race ready."

84. Defendants' misrepresentations proximately caused Plaintiff's injuries.

85. Plaintiff seeks to recover his direct damages, special damages, expectancy damages, incidental/consequential damages, reliance damages, exemplary damages, pre- and post-judgment interest at the highest rates allowed by law, and costs of court.

## COUNT VII – UCC Remedies
(Against All Defendants)

86. The preceding paragraphs are incorporated herein fully by reference.

87. A reasonable time has passed for shipment and delivery of the car. Defendants were reasonably notified, and the Bill of Sale is terminated.

88. Alternatively, Defendants have repudiated the Bill of Sale. Plaintiff has reasonable grounds for insecurity. He has sought reasonable assurances for more than ten months to no avail. More than 30 days have elapsed since Plaintiff's justified demand for reasonable assurances of due performance of the Bill of Sale. Therefore, Defendants have repudiated the agreement. Plaintiff is entitled to recover the price that has been paid, recover damages for non-delivery, and recover the non-conforming goods.

89. Plaintiff is entitled to an immediate inspection of the goods.

90. Defendants breached the warranty of title.

## COUNT VIII – Money Had and Received
(Against All Defendants)

91. The preceding paragraphs are incorporated herein fully by reference.

92. Defendants hold money paid to them for the Corvette Defendants did not own and for modifications to a car that Plaintiff was not the legal owner of.

93. Plaintiff tendered his funds to Defendants based on their fraud and deceit.

94. The money belongs to Plaintiff in equity and good conscience. Plaintiff was damaged and seeks to recover his actual damages, exemplary damages to which caps do not apply, attorneys' fees, pre- and post-judgment interest at the highest rates allowed by law, and costs of court.

**Duntov 000122**

## COUNT IX – Alter Ego
(Against All Defendants)

95. The preceding paragraphs are incorporated herein fully by reference.

96. Duntov was organized and operated as a mere tool or business conduit ("alter ego") of the Sevadjians.

97. At all relevant times, the Sevadjians had no liability protection or limitation through Duntov as a result of the forfeiture of Duntov's charter with the Texas Secretary of State.

98. The unity between one or both of the Sevadjians and Duntov was such that was no meaningful separation between the two.

99. One or both of the Sevadjians used Duntov for the purpose of perpetuating an actual fraud on Plaintiff.

100. One or both of the Sevadjians did not observe the corporate formalities and exercised control over Duntov.

101. The separate existence of Duntov should be pierced or ignored to hold one or both of the Sevadjians liable for the actions of Duntov.

## VII.
## CONDITIONS PRECEDENT

102. All conditions precedent to Plaintiff's right to recover on all causes of action pleaded herein have been performed or have occurred.

## VIII.
## ATTORNEYS' FEES

103. Plaintiff seeks recovery of his reasonable and necessary attorneys' fees from Defendants through trial and appeal pursuant to Sections 38.001, *et. seq.* and 134.001, *et. seq.* of the Texas Civil Practice and Remedies Code and pursuant to Section 17.01, *et. seq.* of the Texas Business and Commerce Code.

**Duntov 000123**

# IX.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Court place a constructive trust on the vehicle and the funds Defendants obtained as a result of their fraud, and that upon final hearing of the cause, judgment be entered for Plaintiff against Defendants for damages in the principal amount of $94,553.92, pre and post-judgment interest at the maximum rate allowed by law, costs of court and attorneys' fees, exemplary damages, and such other and further relief to which Plaintiff may be justly entitled at law or in equity.

Dated: August 7, 2020

Respectfully submitted,

*/s/ Darla J. Gabbitas*
Darla J. Gabbitas
Texas State Bar No. 24089458
darla.gabbitas@wickphillips.com
Daniella G. Heringer
State Bar No. 24103460
daniella.heringer@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
214-692-6200
214-692-6255 (fax)

**ATTORNEYS FOR FRANCK RADENNE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on August 7, 2020.

*/s/ Darla J. Gabbitas*
Darla J. Gabbitas

**Duntov 000124**