FILED
10/23/2020 7:25 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Loaidi Grove DEPUTY

## CAUSE NO. DC-20-01121

| | | |
|---|---|---|
| **ALAN SEVADJIAN,** | § | **14TH JUDICIAL DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **TEXAS DEPARTMENT OF** | § | |
| **MOTOR VEHICLES,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | **OF THE STATE OF TEXAS** |
| | § | |
| ***CONSOLIDATED WITH*** | § | |
| | § | |
| **FRANCK RADENNE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DUNTOV MOTOR COMPANY, LLC,** | § | |
| **ALAN SEVADJIAN, AND EDWARD** | § | |
| **SEVADJIAN,** | § | |
| **Defendants.** | § | **IN DALLAS COUNTY** |

## PLAINTIFF'S TRADITIONAL AND NO EVIDENCE PARTIAL MOTION FOR SUMMARY JUDGMENT

Under Texas Rule of Civil Procedure 166a, Plaintiff Franck Radenne ("Plaintiff" or "Radenne") files this Traditional and No Evidence Partial Motion for Summary Judgment ("Motion") against Defendants Duntov Motor Company, LLC ("Duntov"), Alan Sevadjian ("Alan"), and Edward Sevadjian ("Edward") (collectively, "Defendants"), and respectfully states as follows:

**EXHIBIT**

**Z**

**Duntov 000141**

# Table of Contents

I. PRELIMINARY STATEMENT .................................................................. 3

II. SUMMARY JUDGMENT EVIDENCE.................................................... 3

III. UNDISPUTED FACTS ........................................................................ 4

IV. TRADITIONAL MOTION FOR SUMMARY JUDGMENT—ARGUMENT
AND AUTHORITIES ................................................................................ 9

    A.     Defendants Cannot Deliver The Goods Sold—A Modified 1968
    Corvette—And Have Breached Their Warranties Of Title. ................... 9

    B.     Defendants' Failure To Deliver A 1968 Corvette Is A Breach Of
    Contract............................................................................................. 11

    C.     Defendants' Employed Deceptive Trade Practices By
    Misrepresenting (1) The Presence Of The VIN On The Frame; (2)
    The Hanna Car As 1968 Chevrolet Corvette; And (3) That
    Radenne Would Be The "Legal Owner" On Payment........................ 12

    D.     Defendants Fraudulently Misrepresented The Hanna Car Was A
    1968 Corvette And That Its Chassis Had A Factory-Inscribed VIN. .................. 14

    E.     Alan Sevadjian And Edward Sevadjian Are The Alter Ego Of
    Duntov Motors................................................................................... 15

V. NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT—ARGUMENT
AND AUTHORITIES .............................................................................. 16

    A.     Defendants Have No Evidence To Support Their Breach Of
    Contract Counterclaim. ..................................................................... 17

    B.     Defendants Have No Evidence That Radenne Violated Rule 13 Of
    The Texas Rules of Civil Procedure. ................................................. 17

    C.     Defendants Have No Proof Of Essential Elements Of Certain
    Affirmative Defenses. ....................................................................... 18

VI. REQUEST FOR RELIEF ................................................................... 24

**Duntov 000142**

## I.  PRELIMINARY STATEMENT

When Plaintiff contacted Duntov from Switzerland seeking restoration/modification work on a not-yet purchased vintage car, Alan took the opportunity to unload a "car" made of a hodge-podge of pieces and parts registered to Omer Hanna (the "Hanna Car").  While the Hanna Car has some Corvette parts, it is not a 1968 Chevrolet Corvette and has serious impediments to the legal transfer of title.  Nonetheless, at every turn Defendants misrepresented the car's identification, how title could be transferred and the quality of the goods.  At the time of sale at least two facts were known to Defendants: (1)  the Hanna Car has a reassigned Vehicle Identification Number ("VIN") plate, the seventh digit of which is a "5," not the correct letter "S;" ; and (2) the Hanna Car has a 1970s-era chassis that does not have a factory-inscribed VIN stamp.

In breach of warranties, the contract, and acceptable trade practices, Defendants misrepresented the Hanna Car as a 1968 Corvette and the existence of a factory-inscribed VIN on the chassis to obtain both Radenne's agreement to the Bill of Sale dated June 8, 2018 ("Bill of Sale") and his money.  Today, Defendants have taken almost $100,000.00 from Plaintiff, have not delivered a modified 1968 Corvette, and refuse to return Plaintiff's money.

## II.  SUMMARY JUDGMENT EVIDENCE

Plaintiff's summary judgment evidence is contained in the Appendix filed contemporaneously with this Motion and incorporated herein by reference, which includes:

Declaration of Franck Radenne with attachments

Deposition of Alan Sevadjian

Declaration of Kevin Mackay

Certified copy of the Corrected Order dated June 29, 2012, in the matter *In re 1968 Corvette VIN#1946785422741*, No. 8466, in the County Court of Brown County, Texas

Certified copy of the Order dated June 5, 2012, in the matter *In re 1968 Corvette*

**Duntov 000143**

VIN#1946678542274I, No. 8466, in the County Court of Brown County, Texas

Certified copy of the Amended Order dated June 20, 2012, in the matter *In re 1968 Corvette VIN#1946678542274I*, No. 8466, in the County Court of Brown County, Texas

Declaration of Darla J. Gabbitas with attachments

Business Records Declaration of the National Insurance Crime Bureau with attachmentsTexas Certificate of Title dated July 11, 2012

## III. <u>UNDISPUTED FACTS</u>

1.      Plaintiff is a citizen of France, a vintage racing enthusiast and a sports car driver.[1]

2.      In 2018, Radenne contacted Defendants through email and by phone[2] seeking modifications to a vintage Corvette that he intended to purchase, have modified and then drive on-road and in races through Federation Internationale de L'Automobile ("FIA") European historic racing.[3]

3.      During their communications, Alan suggested that Plaintiff purchase Duntov's "in stock" 1969 Corvette (later exclusively discussed as a 1968 Corvette).[4]   Alan stated Defendants had a title for the car and it could be modified to Franck's specifications.[5]

4.      On May 16, 2018, Alan supplied this picture of the Hanna Car to Radenne

---

[1] *See* attached Exhibit A, Declaration of Franck Radenne dated October 23, 2020 ("Radenne Dec.") ¶ 3.") [APPX. 000001].

[2] Radenne Dec. ¶ 4 [APPX. 000001].

[3] Radenne Dec. ¶ 5 [APPX. 000002].

[4] *See* Exhibit A-1 Email from Alan dated May 2, 2018 [APPX. 000006]. In order to comply with the Dallas County General Order dated April 6, 2020, only the relevant pages of the email thread are attached. A complete copy of the email thread will be made available upon the Court's or opposing counsel's request.

[5] *See id.* ("We have a 69 Corvette with a title in stock with a Duntov built roll cage already installed."); *see also* Exhibit A-2 Email from Alan dated June 6, 2018 [APPX. 000010-11] ("[W]e will provide you the car built exactly to your specifications.") (Later discussions identify the referenced car as a 1968 Corvette when Alan sent pictures of the vehicle to Radenne on May 16, 2018.). In order to comply with the Dallas County General Order dated April 6, 2020, only the relevant pages of the email thread are attached. A complete copy of the email thread will be made available upon the Court's or opposing counsel's request.

**Duntov 000144**

---

representing it to be the 1968 Corvette he wanted Radenne to purchase.[6]



5.      After further discussions in early 2018, Defendants sent a proposed Bill of Sale to Radenne.[7]  Radenne pointed out that the VIN identified in the Bill of Sale was not for a Corvette because the seventh digit was a "5" and not an "S."[8] The VIN's seventh digit denotes the physical location where the car was built and should be a letter, not a number.[9]  For 1968 Corvettes, the letter should be an S to denote the car was built in St. Louis, Missouri.[10]

6.      Defendants did not disclose that the Texas Issued Certificate of Title has the 5-VIN matching the body of the Hanna Car's reissued VIN plate affixed to the door bearing the 5-VIN,

---

[6] *See* Exhibit A-3 Email from Alan dated May 16, 2018 [APPX. 000012-13]. In order to comply with the Dallas County General Order dated April 6, 2020, only the relevant pages of the email thread are attached. A complete copy of the email thread will be made available upon the Court's or opposing counsel's request; *see also* attached Exhibit B, Deposition of Alan Sevadjian dated June 16, 2020 ("Alan Depo."), 84:21-24 ("Q: I'm looking at RADENNE 92. Is that a photograph you sent to Franck? A: Yes"); 80:14-16 [APPX. 000024, 23].

[7] *See* Exhibit A-4 Email from Alan dated June 8, 2018 [APPX. 000009] ("I have enclosed the Bill of Sale…."). In order to comply with the Dallas County General Order dated April 6, 2020, only the relevant pages of the email thread are attached. A complete copy of the email thread will be made available upon the Court's or opposing counsel's request.

[8] *See* Exhibit A-5 Email from Radenne dated June 20, 2018 at 5:14 a.m. [APPX. 000008]. In order to comply with the Dallas County General Order dated April 6, 2020, only the relevant pages of the email thread are attached. A complete copy of the email thread will be made available upon the Court's or opposing counsel's request.

[9] *See* Alan Depo. 102:2-9 [APPX. 000025]; *see also* attached Exhibit C, Declaration of Kevin Mackay dated October 23, 2020 ("Mackay Dec.") ¶ 14 [APPX. 000036].

[10] Mackay Dec. ¶ 14 [APPX. 000036].

while the chassis has no factory-inscribed VIN.[11] Instead, Defendants switched the "5" to an "S"
in a revised version of the Bill of Sale, claimed the "5" was Alan's mistake **and** assured Plaintiff
the S-VIN as inscribed by the factory was located on the chassis:[12]

> On Jun 20, 2018, at 13:48, franck radenne <radennef@yahoo.com> wrote:
>
> Hi Alan,
>
> Me again, sorry.
> Can you confirm the address of your bank: 1445 ROSS AVENUE - 75202 DALLAS
>
> Can you also confirm the presence VIN on the back of the chassis?
>
> Thanks!
>
> Franck

> On Wednesday, June 20, 2018, 9:06:57 PM GMT+2, Alan Sevadjian <alan@duntovmotors.com> wrote:
>
> Yes, confirming both.

7.      Relying on Defendants' misrepresentations, Radenne signed the Bill of Sale and
made the initial payment of $29,553.92.[13]  Radenne also relied on the misrepresentation that he
was the "legal owner" of the "Corvette," and made progress payments totaling $65,000.00 for the
modifications purportedly being made to a 1968 Corvette with a factory-issued VIN on the body
and chassis, while Defendants were using the funds to modify the Hanna Car.[14]

---

[11] *See* Alan Depo. 105:3-10, 106:15-17, 185:9-13 [APPX. 000025, 26, 30]; *see also* Mackay Dec. ¶ 13 [APPX. 000036].

[12] *See* Exhibit A-7, Email from Alan dated June 20, 2018 at 9:06 p.m. [APPX. 000007]. *See also* Exhibit A-6 Email from Alan dated June 20, 2018 at 2:26 p.m.  [APPX. 000007-8] ("That was my fault entirely. You are correct, the '5' in the middle was supposed to be an 'S', and there were[sic] was an extra '2' in the middle of the sequence #. The bill of sale has been corrected and is enclosed."). In order to comply with the Dallas County General Order dated April 6, 2020, only the relevant pages of the email thread are attached. A complete copy of the email thread will be made available upon the Court's or opposing counsel's request; *compare* Exhibit A-9 Email from Alan dated February 15, 2019 (including a picture of a VIN plate identified by Alan as the "factory VIN" which depicts a "5" instead of an "S"). In order to comply with the Dallas County General Order dated April 6, 2020, only the relevant pages of the email thread are attached. A complete copy of the email thread will be made available upon the Court's or opposing counsel's request.

[13] Radenne Dec. ¶ 13 [APPX. 000036]; *see also* Exhibit A-8 executed Bill of Sale ("Bill of Sale") [APPX. 000014].

[14] The Terms and Conditions supplied with the Bill of Sale ("Terms and Conditions") state Radenne is the legal owner of the S-VIN Corvette. *See* Bill of Sale [APPX. 000014-16]; *see also* Radenne Dec. ¶¶ 14-19 [APPX. 000003-4].

**Duntov 000146**

8.      On February 8, 2019, Plaintiff traveled to the U.S. to check the progress on the several-months overdue delivery of the modified goods.[15] During Plaintiff's visit, he saw a newly created VIN plate with the S-VIN on Edward's office desk.[16]  Edward stated that the Sevadjians intended to affix this "new proper GM VIN" that Alan ordered from the internet to the car's windshield in the location of a factory-installed public VIN plate.[17]  This new plate was not issued by the State of Texas[18] and the plate style is not the 1968 style, but from a later period.[19]  Radenne returned home and sent several emails to Defendants requesting information on the VIN issue.

9.      Finally, Alan replied and said:[20]

The car lacked a GM VIN number because the windshield frame to which it was attached had been removed in preparation for racing.  The owner at the time had lost the title, and the procedure to acquire a new title involved having a State Trooper examine the vehicle, get the serial number off of the frame and create a new VIN plate with that number and affix it to the car.  Since there was no windshield post, it was affixed to the hinge pillar, drivers side (see below).



The factory VIN number is stamped on top of the frame rail  on the driver's side in the middle of the door opening.  The officer made an error and an  S' was recorded as a '5'.  I did a search of the VIN number with a 5 and also with an S, and there is no issue with the title either way.  I have had a new proper GM VIN number made that shows the  S' instead of the '5'.

10.      The rough contours of Alan's tall tale bear a remote resemblance to actual facts.  In 2012, Omer Hanna applied for and received a Reassigned VIN for a 1968 Corvette Body to match

---

[15] Radenne Dec. ¶ 20 [APPX. 000004].

[16] Id. at 21 [APPX. 000004].

[17] Id.; Alan Depo. 126:8-14 [APPX. 000028].

[18] Alan Depo. 126:8-10 [APPX. 000028].

[19] Mackay Dec. ¶ 27 [APPX. 000038].

[20] See Exhibit A-9 Email from Alan dated February 15, 2019 [APPX. 000017-19] (highlighted emphasis added).

**Duntov 000147**

a 1968 Corvette chassis, but that chassis had the *5-VIN* on the chassis.[21]  Today, Alan admits there

is no VIN on the chassis—factory-inscribed or otherwise.[22]  In addition to misrepresenting the S-

VIN in the Bill of Sale; the State of Texas Reassigned VIN is obscured by paint in the above

picture (but the 5 is visible);[23] and the chassis on the Hanna Car *is not* a 1968 chassis.[24] The Hanna

Car chassis is of a style for  1975, 1976 or 77.[25]

      11.     In reality, GM never manufactured a car with the S-VIN.[26]  The National Insurance

Crime Bureau reports that General Motors did not build a 1968 Corvette convertible with the S-

VIN.[27]  General Motors did build a 1968 Corvette on June 17, 1968 with the factory-stamped VIN

1943**7S**422741, which was sold new in Bethesda, Maryland.[28] Mr. Cooley is the owner of that car,

which was stolen from him in late 1981 or 1982.[29]  Most certainly,  General Motors did not build

---

[21] Exhibit D (certified copy of the Corrected Order dated June 29, 2012, in the matter *In re 1968 Corvette VIN#1946785422741*, No. 8466, in the County Court of Brown County, Texas) ("Corrected Order")[APPX. 000039]. The Court issued a prior order with the S-VIN on June 5, 2012, which was replaced by the Corrected Order. *See* Exhibit E (certified copy of the Order dated June 5, 2012, in the matter *In re 1968 Corvette VIN#1946785422741*, No. 8466, in the County Court of Brown County, Texas) [APPX. 000041]; *see also* Exhibit F (certified copy of the Amended Order dated June 20, 2012, in the matter *In re 1968 Corvette VIN#1946785422741*, No. 8466, in the County Court of Brown County, Texas) [APPX. 000042-44]. Exhibits D, E, and F are collectively referred to as the "Hanna Orders."

[22] *See* Alan Depo. 184:6-21 [APPX. 000030]; *see also* Hanna Orders for which Radenne seeks judicial notice of the Brown County Court's ruling. In order to comply with the Dallas County General Order dated April 6, 2020, only the relevant pages of Exhibit 29 to Alan's deposition are attached. A complete copy of the exhibit will be made available upon the Court's or opposing counsel's request. *See also* Mackay Dec. ¶ 13 [APPX. 000036].

[23] *See* Exhibit G, Declaration from Darla J. Gabbitas dated October 22, 2020 [APPX. 000045-46; *see also* Exhibit G-1, Email from Matthew Hahn to Darla Gabbitas and enclosed photograph dated January 23, 2020 [APPX. 000047-48].

[24] Alan Depo. 143:13-14 ("I believe the frame is a '75 or '76 or possibly a '77.") [APPX. 000029]; Mackay Dec. ¶ 22 [APPX. 000037].

[25] *Id.*

[26] *See* Exhibit H National Insurance Crime Bureau Business Records Declaration dated September 24, 2020 ("NICB Records") [APPX. 000049-55]; *see also* Mackay Dec. ¶¶ 23, 27 [APPX. 000037, 38].

[27] Exhibit H, NICB Records.

[28] *Id.*

[29] *See* Intervenor John Franklin Cooley, Jr.'s Original Petition in Intervention and Requests for Disclosures dated March 26, 2020 ("Cooley's Intervention") ¶ 13.

**Duntov 000148**

---

any Corvette in 1968 using a VIN-less chassis of a style that it would produce for at least seven to ten years.

## IV. TRADITIONAL MOTION FOR SUMMARY JUDGMENT—ARGUMENT AND AUTHORITIES

To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[30] Once the movant establishes his entitlement to summary judgment, the burden shifts to the non-movant to expressly present competent summary judgment proof to establish a genuine issue of material fact.[31]

### A. Defendants Cannot Deliver The Goods Sold—A Modified 1968 Corvette—And Have Breached Their Warranties Of Title.

Texas's codification of the Uniform Commercial Code ("UCC") establishes, *inter alia*, the express warranty of title.[32] The UCC "is to be liberally construed and applied to promote its underlying purpose to make uniform the law among the various jurisdictions."[33]

In every contract for the sale of goods there is an implied warranty by the seller that "the title conveyed shall be good, and its transfer rightful[.]"[34] There is no need to show that the seller knew of any problem with the title, as the warranty arises by operation of law regardless of the

---

[30] *Schachtner v. Crosby State Bank*, 14-03-00424-CV, 2004 WL 78202, at *1 (Tex. App.—Houston [14th Dist.] Jan. 20, 2004, no pet.) (citing TEX. R. CIV. P. 166a(c)); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985)).

[31] *See Virginia Indonesia Co. v. Harris Co. Appraisal Dist.*, 910 S.W.2d 905, 907 (Tex. 1995).

[32] TEX. BUS. & COM. CODE §§ 2.312-313.

[33] TEX. BUS. & COM. CODE § 1.103(a)(3); TEX. GOV'T. CODE § 311.028 ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it."). The Texas UCC was derived from a model, uniform law promulgated by the American Law Institute and the National Conference of Commissioners of Uniform States Laws. Daryl B. Robertson, *Report of the Commercial Code Committee of the Section of Business Law of the State Bar of Texas on Revised UCC Articles 3 and 4*, 47 BAYLOR L. REV. 425, 428 (1995).

[34] TEX. BUS. & COM. CODE § 2.312.

**Duntov 000149**

---

seller's knowledge.[35]  In addition, a seller may create express warranties either through affirmations of fact to the buyer or any description of the goods which become the basis of the bargain.[36]  Here, Defendants both impliedly warranted that the goods' title was good and rightful and expressly warranted that the goods was  a 1968 Corvette.   Defendants' identification of the goods as a 1968 Chevrolet-manufactured Corvette with a factory-inscribed VIN on the chassis formed the basis of the parties' bargain.[37]  The Hanna Car is not a 1968 Corvette with a factory-inscribed VIN on its chassis, in breach of seller's express warranty.[38]

A car without a title and that is not what it is represented to be breaches the implied warranty of title.[39]  Defendants prepared and proffered a Bill of Sale for a 1968 Chevrolet Corvette bearing the S-VIN in reference to the Hanna Car which bears the 5-VIN.[40]  Alan's original action against TxDOT demonstrates the lack of transferable title.[41]  Even if Defendants could provide a legally transferrable title, the car is not what was represented—a 1968 Corvette.  Chevrolet did not

---

[35] *Shelton v. Tidwell*, 2001 Tenn. App. LEXIS 628 (Tenn. Ct. App., 2001).

[36] Tex. Bus. & Com. Code § 2.313.

[37] *Allen v. Parsons*, 555 S.W.2d 522, 524 (Tex. Civ. App.—Texarkana 1977, writ dism'd by agr.) (indicating that a promise essential to a goods' usability is the basis of the bargain); Radenne Dec. ¶ 14 [APPX. 000003].

[38] *See* Exhibit A-6 (Email from Alan dated June 20, 2018 at 2:26 p.m.) [APPX. 000007-8] (confirming presence of VIN on chassis prior to Bill of Sale); *but see* Alan Depo. 108:5-18 [APPX. 000026].

[39] *See Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 829 (Tex. App.—Fort Worth 2008, no pet.) ("***any description*** of the goods that is made part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise.") (emphasis added) (citing Tex. Bus. & Com. Code § 2.313(a)(1); *Doyle v. Harben*, 660 S.W.2d 586, 589 (Tex. App.—San Antonio 1983, no writ) (concluding that seller who sold stolen vehicle with "quick title" breached warranty of title, despite not knowing that vehicle was stolen); *see also Saber v. Dan Angelone Chevrolet, Inc.*, 811 A.2d 644, 651 (R.I. 2002); *Heffler v. Joe Bells Auto Serv.*, 946 F. Supp. 348, 354 (E.D. Pa. 1996); *see also Prishwalko v. Bob Thomas Ford, Inc.* 636 A.2d 1383 (Conn. App. 1993) (holding that even a mistaken statement of a car's mileage was a warranty); *Rogers v. Crest Motors, Inc.*, 516 P.2d 445, 447 (Colo. Ct. App. 1973) (holding the dealer breached the terms of the sale when the buyer later discovered the car had been driven over 1,800 miles).

[40] Exhibit A-8 (Bill of Sale) [APPX. 000014-16]; Exhibit A-6 (Email from Alan dated June 20, 2018 at 2:26 p.m.) [APPX. 000007-8]; Alan Depo. 144:20-22 [APPX. 000029].

[41] *See* Alan's Original Petition dated January 21, 2020.

**Duntov 000150**

---

manufacture the S-VIN and the car has a VIN-less 1970s-era frame.[42] In *Saber* where the warranty of title was found to be breached, plaintiff purchased a used red 1985 Chevrolet Corvette with an automatic transmission.[43] Saber subsequently learned: a previous title application listed the same car as black with a manual transmission; the confidential derivative VIN number did not correspond with the public VIN; the car had parts from a stolen car; and the car had been rebuilt using parts from various cars.[44] The parallels between the Saber Corvette and the Hanna Car cannot be ignored. In neither case does the confidential derivative VIN[45] match the public VIN.[46] Intervenor John Cooley asserts title to a 1968 Corvette bearing VIN 194*378S*422741, which was stolen in late 1981 or 1982.[47] And, Chevrolet did not manufacture a Corvette with the S-VIN.[48] Here, the hodge-podge of parts with a reissued VIN on the body (obtained from matching a number on a chassis) with a replaced 1970s-era chassis bearing no VIN[49] is the Hanna Car, ***but it is not*** a 1968 Corvette.

**B.      Defendants' Failure To Deliver A 1968 Corvette Is A Breach Of Contract.**

        In order to prevail on a breach of contract claim, a plaintiff must prove that: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually

---

[42] *See* Exhibit H (NICB Records) [APPX. 000049-55]; *see also* Alan Depo. 106:15-17, 143:13-14 [APPX. 000026, 29]; Mackay Dec. ¶¶ 13, 22 [APPX. 000036, 37].

[43] *Saber*, 811 A.2d at 647, 652.

[44] *Id.*

[45] The confidential derivative VIN is located on the car's chassis. Mackay Dec. ¶ 16 [APPX. 000036].

[46] The public VIN is located on the windscreen pillar. *Id.* In this case, the public VIN was judicially reassigned and the plate is located inside the driver's door pillar. Alan Depo. 182:14-17, 183:4-7 [APPX. 000030].

[47] *See* Cooley's Intervention.

[48] NICB Records [APPX. 000049-55]; Mackay Dec. ¶ 27 [APP. 000038].

[49] Alan Depo. 185:9-13 [APPX. 000030]; Mackay Dec. ¶ 23 [APPX. 000037].

**Duntov 000151**

required; and (4) the plaintiff sustained damages due to the breach."[50]  There are no genuine issues of fact regarding any element of this claim.  The Bill of Sale is a contract for the sale and purchase of a 1968 Corvette.[51]  Plaintiff paid $29,553.29.[52]  Additionally, Plaintiff paid $65,000.00 for the modification of the 1968 Corvette he purportedly owned.[53]  As discussed above, Defendants have not delivered a 1968 Corvette or returned Plaintiff's money and he has been damaged.

**C.     Defendants' Employed Deceptive Trade Practices By Misrepresenting (1) The Presence Of The VIN On The Frame; (2) The Hanna Car As 1968 Chevrolet Corvette; And (3) That Radenne Would Be The "Legal Owner" On Payment.**

A plaintiff may recover under the Deceptive Trade Practices Act ("DTPA") if the following elements are established: (1) the plaintiff "is a consumer; (2) the defendant engaged in a false, misleading, or deceptive act; and (3) the act constituted a producing cause of the plaintiff's damages."[54]  "A primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit."[55]

Plaintiff is a consumer;[56] Defendants are sellers;[57] Defendants' statements that the Hanna Car was a 1968 Chevrolet Corvette and that there was a factory-inscribed VIN on the chassis were false[58] as were the statements that Radenne was the "legal owner" of the car based on the Bill of

---

[50] *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

[51] Exhibit A-8 (Bill of Sale) [APPX. 000014-16].

[52] *Id.*; Radenne Dec. ¶ 19 [APPX. 000004].

[53] *See* Radenne Dec. ¶ 19 [APPX. 000004].

[54] *Sparks v. Booth*, 232 S.W.3d 853, 864 (Tex. App.—Dallas 2007, no pet.) (citing TEX. BUS. & COM. CODE § 17.50(a); *Doe v. Boys Club of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex. 1995)).

[55] *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980).

[56] TEX. BUS. & COM. CODE § 17.45(4) (defining consumer as "an individual . . . who seeks or acquires by purchase or lease, any goods or services").

[57] Exhibit A-8 (Bill of Sale) [APPX. 000014-16].

[58] *See* Section III, *supra*; *see also Fieldtech Avionics*, 262 S.W.3d at 829.

**Duntov 000152**

Sale instead of following a legal transfer of a certificate of title.[59]  Plaintiff paid $94,553.92 to Defendants as a direct result of the misrepresentations—money which Defendants refuse to return.[60]

Moreover, Plaintiff is entitled to damages for his mental and emotional distress and treble damages because the Defendants acted knowingly, which may be inferred from their objective manifestations of awareness.[61] Here, there is no material issue of fact that Alan acted with actual awareness to conceal the Hanna Car's defects.  He initially prepared the Bill of Sale with a "5" as the seventh digit.[62]  When Plaintiff pointed out this error, he had every opportunity to disclose the reassigned VIN plate in the Hanna Car's door jamb—he did not.[63]  Or, he could have disclosed the "5" located on Hanna's Texas-issued Certificate of Title—he did not.[64]  He could have disclosed his intent to have the VIN reassigned a second time to change the "5" to an "S"—he did not; instead, he blamed himself for a typing error.[65]  Defendants' next act was to order a fake VIN plate without disclosing that to Plaintiff.[66]  And, when confronted about the VIN issue, Alan repeated the demonstrably false misrepresentation that the factory-inscribed VIN was located on

---

[59] *Gallas v. Car Biz, Inc.*, 914 S.W.2d 592, 594 (Tex. App.—Dallas 1995, writ denied) (explaining that no title passes if purported seller does not possess and cannot transfer "good title," as evidenced by certificate of title).

[60] Exhibit A-8 (Bill of Sale) [APPX. 000014-16]; *see also* Alan Depo. 18: 10-12, 202:13-18 [APPX. 000022, 32].

[61] *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 240 (Tex. App.—El Paso 2012, pet. denied); *St. Paul Surplus Lines Ins. Co., Inc., v. Dal–Worth Tank Co., Inc.*, 974 S.W.2d 51, 53–54 (Tex.1998); *Etheridge v. Oak Creek Mobile Homes, Inc.*, 989 S.W.2d 412, 418 (Tex.App.—Beaumont 1999, no pet. h.) ("Actual awareness may be inferred from the circumstances."); *Streber v. Hunter*, 221 F.3d 701, 729–30 (5th Cir. 2000) (internal quotations omitted).

[62] Exhibit A-5 (Email from Radenne dated June 20, 2018 at 5:14 a.m.) [APPX. 000008]; Exhibit A-6 (Email from Alan dated June 20, 2018 at 2:26 p.m.) [APPX. 000007-8].

[63] Alan Depo. 116:22-117:2 [APPX. 000027].

[64] Exhibit I, Texas Certificate of Title dated July 11, 2012 ("Cert. of Title") [APPX. 000056-57].

[65] Exhibit A-6 (Email from Alan dated June 20, 2018 at 2:26 p.m.) [APPX. 000007-8].

[66] Alan Depo. 186: 25-187:11; 188:14-189:4 [APPX. 000031]; Mackay Dec. ¶ 27 [APPX. 000038].

**Duntov 000153**

the chassis.[67]   Defendants' objective manifestations demonstrate trickery inferring knowledge.

**D.    Defendants Fraudulently Misrepresented The Hanna Car Was A 1968 Corvette And That Its Chassis Had A Factory-Inscribed VIN.**

A plaintiff must establish the following elements to recover for common law fraud:

> (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation intending that the other party act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.[68]

As discussed above, Defendants' misrepresentations are not in dispute.  The Hanna Car is not a 1968 Corvette and there is no factory-inscribed VIN on the 1970s-era chassis.[69]  When Alan made the misrepresentations about the car and chassis, he did so to induce Plaintiff's purchase and his continued payments for modifications.[70]   Radenne relied on those representations[71] to his detriment and was damaged in the amount paid to Defendants.[72]

A statement is fraudulent when "the speaker [knows] it was false when made or the speaker [makes] it recklessly without knowledge of the truth."[73]  As discussed above, there is no material dispute that Defendants' misrepresentations were knowing, but it is sufficient for the statements

---

[67] *See* Exhibit A-7, Email from Alan dated June 20, 2018 at 9:06 p.m. [APPX. 000007] (confirming presence of VIN on chassis); Exhibit A-9, Email from Alan dated February 15, 2019 [APPX. 000017-19] (indicating that Alan will investigate whether VIN on chassis can be changed); *see also* Alan Depo. 184:6-21 [APPX. 000030].

[68] *Siltek Group Tex., LLC v. A&A Landscape & Irrigation LP*, 05-17-00042-CV, 2018 WL 3342691, at *3 (Tex. App.—Dallas July 9, 2018, no pet.); *Gray v. Waste Res., Inc.*, 222 S.W.3d 522, 524 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Formosa Plastic Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

[69] Alan Depo. 184:6-21, 143:13-14 [APPX. 000030, 29]; Mackay Dec. ¶¶ 13, 22 [APPX. 000036, 37].

[70] Radenne Dec. ¶¶ 14-19 [APPX. 000036-37].

[71] *Id.*

[72] *Id.*

[73] *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 526 (Tex. 1998).

**Duntov 000154**

to have been made recklessly, without regard to the consequences.[74] Alan confirmed the factory-inscribed VIN was located on the chassis—not once but twice—a chassis he now admits is a 1970s-era chassis without a VIN.[75]

**E.**     **Alan Sevadjian And Edward Sevadjian Are The Alter Ego Of Duntov Motors**

"Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice."[76] Alter ego is "shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes."[77]

Here the signed Certificate of Title reflects that Alan personally—and not Duntov— holds title to the Hanna Car.[78] Moreover, Alan admits that Duntov allegedly made monthly payments on the Hanna Car until the "agreed sales price" was paid off despite the Certificate of Title transferring ownership to Alan personally.[79] Duntov then, without any Certificate of Title, purports to convey the S-VIN to Radenne.[80] Neither Duntov nor Alan transferred the registration to improperly avoid

---

[74] *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex. 1983) (finding misrepresentations of actual facts supported a finding of recklessness).

[75] Exhibit A-7 (Email from Alan dated June 20, 2018 at 9:06 p.m.) [APPX. 000007] (confirming presence of VIN on chassis); Exhibit A-9 (Email from Alan dated February 15, 2019) [APPX. 000017-19] (indicating that Alan will investigate whether VIN on chassis can be changed); Alan Depo. 143:11-14, 184:6-21 [APPX. 000029, 30].

[76] *Tryco Enterprises, Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (internal quotation omitted).

[77] *Id.*

[78] Exhibit I, Cert. of Title [APPX. 000056-57] (the back of which indicates that Omer Hanna transferred ownership of the Hanna Car to Alan personally).

[79] Alan Depo. 80:6-16 [APPX. 000023].

[80] *Robinson*, 390 S.W.3d at 508 (noting that "the degree to which . . . ***corporate and individual property have been kept separately***" is considered when determining whether the alter ego theory applies) (emphasis added).

**Duntov 000155**

taxation.[81] And tellingly, Alan—not Duntov—brought the action against TxDOT attempting to cure the defective title for the Hanna Car.[82] Defendants conduct reveals that Alan and Edward treated themselves and the entity as one in thought and action.

In addition to the lack of separateness, Alan and Edward failed to observe corporate formalities for the entity by failing to maintain the entity's limited liability status with the State of Texas.[83] Defendants used the entity (who did not have title to any relevant automobile) to perpetuate a fraud through the misrepresentations about providing a Bill of Sale for a 1968 Corvette manufactured by General Motors with a legal factory-inscribed VIN, when what Duntov, Alan and Edward had was a homemade hodge-podge of pieces and parts.

## V. NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT—ARGUMENT AND AUTHORITIES

In their Amended Answer & Counterclaim, Defendants offer meritless affirmative defenses, allege a baseless breach of contract counterclaim and assert a request for sanctions against Plaintiff. Defendants cannot establish one or more of the requirements for their affirmative defenses and breach of contract counterclaim and cannot establish any reason sanctions are warranted.

Under Texas Rule of Civil Procedure 166a(i), a party may move for summary judgment if no evidence exists to support "one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial."[84] The moving party must allow adequate

---

[81] See TEX. TRANSP. CODE § 501.145(a) ("Not later than the 30th day after the date of assignment on the documents or the date provided by Section 152.069, Tax Code, the purchaser of the used motor vehicle shall fil with the county assessor-collector: (1) the certificate of title or other evidence of title . . . .").

[82] See Alan's Original Petition dated January 21, 2020.

[83] See TEX. TAX CODE § 171.309(1).

[84] TEX. R. CIV. P. 166a(i); *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 866 (Tex. App.—Houston [1st Dist.] 1999), *aff'd*, 73 S.W.3d 193 (Tex. 2002).

Duntov 000156

time for discovery and must state in the motion the elements on which there is no evidence.[85] "The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements."[86]

This matter is set for trial on January 19, 2021 and discovery closes on December 18, 2020.

## A. Defendants Have No Evidence To Support Their Breach Of Contract Counterclaim.

Defendants assert that Radenne breached the contract because Plaintiff, after months of delay, stated in an email that he expected the Corvette to be delivered by no later than mid-February 2020. The elements for a breach of contract claim are the same for Defendants.[87] Here, Defendants have no evidence to support that Plaintiff breached a contract. For example, Defendants have no evidence—because there is none—to support that Defendants performed or offer to deliver a 1968 Corvette with a factory-inscribed VIN to Plaintiff. In fact, as set forth above, the opposite has been established: it is *impossible* for Defendants to deliver to Plaintiff what they purportedly sold him, because Defendants did not modify a 1968 Corvette, they modified the Hanna Car. Without evidence that Defendants performed or tendered performance, Defendants' breach of contract counterclaim must fail.

## B. Defendants Have No Evidence That Radenne Violated Rule 13 Of The Texas Rules of Civil Procedure.

Defendants bear the burden of proving good cause to impose sanctions.[88] Sanctions may be ordered against a party who brings a lawsuit or claim against another party that is fictitious, groundless and false, brought in bad faith, brought for the purpose of harassment, or brought for

---

[85] TEX. R. CIV. P. 166a(i); *Brewer & Pritchard*, 7 S.W.3d at 866-67.

[86] *Brewer & Pritchard*, 7 S.W.3d at 866-67; TEX. R. CIV. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832-33 (Tex. App.–Dallas 2000, no pet.).

[87] *See* fn. 50, *supra*.

[88] *See* TEX. R. CIV. P. 13.

**Duntov 000157**

the purpose of securing a delay of trial.[89] Defendants have no evidence of any element that supports their request for sanctions. Accordingly, Defendants' claim for sanctions should be dismissed.

## C. Defendants Have No Proof Of Essential Elements Of Certain Affirmative Defenses.

Plaintiff also moves for summary judgment on the ground that Defendants have no evidence to satisfy each element, as is their burden,[90] of the following Affirmative Defenses (the "Defenses"):[91]

### 1. Failure to Mitigate Damages.

"The duty to mitigate damages does not come into play until the injured party has notice of the breach of contract."[92] In other words, Defendants must allege that Plaintiff (1) knew of Defendants' breach and (2) failed to mitigate his damages. Defendants have no evidence that Plaintiff, before initiating this lawsuit, knew that Defendants could not deliver a 1968 Corvette with a factory-inscribed VIN to Plaintiff and failed to mitigate the damage he has suffered. As such, Defendants' affirmative defense of failure to mitigate damages should be dismissed as a matter of law.

### 2. Equitable Estoppel and Quasi-Estoppel.

Defendants have no evidence of each and every element of estoppel and quasi-estoppel. To prove estoppel, Defendants' burden is to show that Plaintiff made a false representation to or concealed a material fact from Defendants with the intent that such representation or concealment be acted on, that Radenne knew or had the means of knowing the real facts while Defendants did

---

[89] *Id.*

[90] *See Moulton v. Alamo Ambulance Service, Inc.*, 414 S.W.2d 444, 448-449 (Tex. 1967); *W.L. Moody & Co. v. Rowland*, 99 S.W. 1112, 1115 (Tex. 1907); *Young v. Clark*, 732 S.W.2d 20, 21 (Tex. App.—Houston [14th Dist.] 1987, ref. n.r.e.); *see also* TEX. R. CIV. P. 94 (affirmative defenses must be affirmatively pled).

[91] *See* Defendants' Amended Answer & Counterclaim against Franck Radenne.

[92] *Otto Goedecke, Inc. v. Henderson*, 388 S.W.2d 728, 730 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.).

**Duntov 000158**

not, and that Defendants relied on such representation or concealment.[93]

Defendants have no evidence that Plaintiff ever falsely represented or concealed a fact, much less a material fact from Defendants. As such, Plaintiff could not have intended that any representation or concealment be acted on, and the Defendants could not have relied on a non-existent representation or concealment. Defendants' affirmative defense of estoppel should therefore be dismissed as a matter of law.

To prove the affirmative defense of quasi-estoppel, Defendants must show that Radenne accepted a benefit under a transaction and later asserted a right inconsistent with the position previously taken when he accepted the transactional benefit.[94] Defendants have no evidence that Plaintiff ever accepted a benefit under a transaction and later asserted a right inconsistent with any supposed benefit accepted under such prior transaction with Defendants. Defendants' affirmative defense of quasi-estoppel should therefore be dismissed as a matter of law.

### 3. Laches.

Defendants have no evidence of each and every element of laches. Defendants' burden is to show that Radenne unreasonably delayed the assertion of his legal rights and that Defendants changed their position to their detriment in good faith because of the delay.[95] Defendants have no evidence that Plaintiff's assertion of his legal rights was unreasonably delayed. As such, Defendants could not have changed their position to their detriment in good faith due to any allegedly unreasonable delay. Defendants' affirmative defense of laches should therefore be dismissed as a matter of law.

---

[93] *Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998).

[94] *Lopez v. Munoz, Hockema & Reed, LLP*, 22 S.W.3d 857, 864 (Tex. 2000).

[95] *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 80 (Tex. 1989).

**Duntov 000159**

### 4. Unclean Hands.

Defendants have no evidence of each and every element of unclean hands. Defendants' burden is to show that Defendants have "clean hands,"[96] that Defendants have "been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine of unclean hands."[97] The claims raised in this litigation do not lie in equity, but if they did, Defendants have no evidence of their own clean hands or that they have been seriously harmed. Defendants' affirmative defense of unclean hands should, therefore, be dismissed as a matter of law.

### 5. Release.

Defendants have no evidence of each and every element of their affirmative defense of release. Defendants' burden is to show that there existed a valid contract by which any obligation owed by Defendants to Plaintiff was discharged.[98] Defendants have no evidence that any duties owned to Radenne under the Bill of Sale have been discharged. Defendants' affirmative defense of release should, therefore, be dismissed as a matter of law.

### 6. Contributory Negligence.

Defendants bear the burden of proving that (1) Radenne was negligent and (2) Radenne's own negligence proximately caused his injuries.[99] Defendants have no evidence that Plaintiff's claims are barred because Radenne was negligent and Radenne's negligence proximately caused his injuries. As such, Defendants' affirmative defense of contributory negligence should be dismissed as a matter of law.

---

[96] *Adams v. First Nat. Bank of Bells/Savoy*, 154 S.W.3d 859, 876 (Tex. App.—Dallas 2005, no pet.) ("The affirmative defense of 'unclean hands' requires that a party seeking equity must come with clean hands.").

[97] *Cantu v. Guerra & Moore, LLP*, 448 S.W.3d 485, 496 (Tex. App.—San Antonio 2014, pet. denied) (internal quotations omitted).

[98] *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

[99] *Moore v. Kitsmiller*, 201 S.W.3d 147, 151 (Tex. App.—Tyler 2006, pet. denied).

**Duntov 000160**

7.     **Ratification.**

Defendants' burden on the affirmative defense of ratification is to show that Radenne approved the acts at issue by word or conduct, with full knowledge of the facts of that act, and with the intention of giving validity to the act.[100] Defendants have no evidence that any of the acts complained of were approved by Plaintiff, that Radenne had any knowledge, much less full knowledge of the facts, and intentionally gave validity to those acts. Defendants' affirmative defense of ratification should therefore be dismissed as a matter of law.

8.     **Unavoidable Accident/Act of God.**

Defendants have no evidence that Plaintiff's damages resulted from anything other than Defendants' actions. Accordingly, Defendants' affirmative defense of unavoidable accident/act of God should be dismissed as a matter of law.

9.     **Statute of Frauds.**

Defendants have no evidence that Plaintiff's claims are barred by the statute of frauds as Plaintiff does not claim the benefit of any oral contract—the Bill of Sale is a writing, express warranties are not precluded by the statute of frauds and implied warranties arose as a result of the goods transferred. As such, Defendants' affirmative defense of statute of frauds should be dismissed as a matter of law.

10.     **Fraud.**

Defendants have no evidence of each and every element of fraud against Plaintiff. Defendants' burden to prove fraud as an affirmative defense is to produce evidence on each element of fraud.[101] For example, Defendants have no evidence that Radenne made a material

---

[100] *Motel Enterprises, Inc. v. Nobani*, 784 S.W>2d 5454, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ.).

[101] *See First Bank of Deer Park v. Harris County*, 804 S.W.2d 588, 594 (Tex. App.—Houston [1st Dist.] 1991, no writ) *see also* fn. 68, *supra*.

**Duntov 000161**

representation that was false and that he knew was false when he made it, that he intended Defendants to rely on his statement or that Defendants have suffered damages. Accordingly, Defendants' affirmative defense of fraud should be dismissed as a matter of law.

### 11.  Mutual Mistake.

Defendants have no evidence of a mutual mistake. The "elements of mutual mistake are: (1) a mistake of fact, (2) held mutually by the parties, (3) which materially affects the agreed-upon exchange."[102]  Defendants have not identified any mistake of fact that was mutual.  Moreover, the remedy is rescission, meaning that Defendants should have tendered the return of Plaintiff's funds—which they have not done.  Accordingly, Defendants have no evidence of the elements of mutual mistake and Defendants' affirmative defense should be dismissed as a matter of law.

### 12.  Impossibility of Performance.

Defendants have no evidence of each and every element of impossibility of performance.[103] Defendants' performance is not illegal, and there are no supervening circumstances which have made performance impossible.[104]  Even if Defendants cannot perform under the Bill of Sale because they do not possess a modified 1968 Corvette, the problem is not that they are prohibited by law or by scarcity from doing so, but that they do not desire to do so. Moreover, Defendants are still in possession of nearly $100,000.00 which rightfully belongs to Plaintiff. Accordingly, Defendants' affirmative defense of impossibility of performance should be dismissed as a matter of law.

---

[102] *Green v. Morris*, 43 S.W.3d 604, 606–07 (Tex. App.—Waco 2001, no pet.).

[103] *Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992) ("Where ... a party's performance is made impracticable ... by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged....") (quoting the Restatement (Second) Contract § 261 with approval

[104] *Id.*

**Duntov 000162**

### 13. Modification.

Defendants have no evidence of each and every element of modification. Defendants "must satisfy the traditional requirements of a contract—there must be a meeting of the minds supported by consideration."[105]Defendants have no evidence of any contract modification regarding the goods at issue in the Bill of Sale, much less an agreement that is supported by consideration. Defendants' affirmative defense of modification should therefore be dismissed as a matter of law.

### 14. Disclaimer.

Defendants have no evidence that Plaintiff disclaimed any express or implied warranty of title. Warranty of title is not subject to the disclaimers found in Texas Business and Commerce Code Section 2.312.[106] "Where the language in a purported disclaimer expresses how the seller's liability will be limited rather than what title (or lack thereof) the seller purports to transfer, the purported disclaimer is ineffective."[107] As such, Defendants' affirmative defense of disclaimer should be dismissed as a matter of law.

### 15. Voluntary Payment.

Defendants have no evidence that Plaintiff's claims are barred by voluntary payment. In fact, Defendants have no evidence that Plaintiff made *voluntary* payments as Defendants never told Plaintiff that what he believed he was making payments for did not actually exist.[108] As such,

---

[105] *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App.—Dallas 2008, no pet.).

[106] *See generally Brokke v. Williams*, 766 P.2d 1311, 1313 (Mont. 1989).

[107] *See Quality Components Corp. v. Kel-Keef Enterprises, Inc.*, 738 N.E.2d 524, 536 (Ill. App. 2000) *appeal denied* 744 N.E.2d 289 (Ill. 2001); *see also Moore v. Pro-Team Corvette Sales*, 152 Ohio App. 3d 71 (2002).

[108] *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 772 (Tex. 2005) (explaining that, in order for a payment to be considered a voluntary payment, "a person must pay 'with full knowledge of all the facts.'") (quoting *Ladd v. Southern Cotton Press and Manufacturing Co.*, 53 Tex. 172 (1880); *Tyler v. Tyler*, 742 S.W.2d 740, 743 (Houston [14th Dist.] 1987, writ denied)).

**Duntov 000163**

Defendants' affirmative defense of voluntary payment should be dismissed as a matter of law.

**16. Statute of Limitations.**

Defendants have no evidence that any of Plaintiff's claims are barred by the applicable statutes of limitations. Specifically, Defendants have no evidence that Plaintiff discovered, or in the exercise of reasonable diligence should have discovered, Defendants' deceptive acts any sooner than February 8, 2019, when Plaintiff came to the United States for the first time to review the progress on the several-months overdue delivery of the car.[109] As such, Defendants' affirmative defense of voluntary payment should be dismissed as a matter of law.

## VI. REQUEST FOR RELIEF

For the foregoing reasons, this Court should grant Plaintiff's Motion in its entirety, dismiss Defendants' counterclaim and request for sanctions, and award Plaintiff all costs of these proceedings, including costs of court and attorneys' fees, pre- and post-judgment interest at the maximum rate allowed by law, and such other and further relief to which Plaintiff may be entitled at law or in equity.

---

[109] *See* TEX. BUS. & COM. CODE § 17.565.

**Duntov 000164**

Dated:  October 23, 2020

Respectfully submitted,

/s/ Darla J. Gabbitas
Darla J. Gabbitas
State Bar No. 24089458
darla.gabbitas@wickphillips.com
Daniella G. Heringer
State Bar No. 24103460
daniella.heringer@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile:  (214) 692-6255

**ATTORNEYS FOR PLAINTIFF FRANCK
RADENNE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this document was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on October 23, 2020.

/s/ Darla J. Gabbitas
Darla J. Gabbitas

**Duntov 000165**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Daniella Heringer on behalf of Daniella Heringer
Bar No. 24103460
daniella.heringer@wickphillips.com
Envelope ID: 47493851
Status as of 10/26/2020 3:06 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Matthew Hahn | 24104522 | mhahn@hahnlawfirm.com | 10/23/2020 7:25:09 PM | SENT |
| Daniella Heringer | | daniella.heringer@wickphillips.com | 10/23/2020 7:25:09 PM | SENT |
| Chris Hahn | | chahn@hahnlawfirm.com | 10/23/2020 7:25:09 PM | SENT |
| Mayson Pearson | | Mayson.Pearson@txdmv.gov | 10/23/2020 7:25:09 PM | SENT |
| Barb Morgan | | barb.morgan@wickphillips.com | 10/23/2020 7:25:09 PM | SENT |
| Darla J.Gabbitas | | darla.gabbitas@wickphillips.com | 10/23/2020 7:25:09 PM | SENT |

Associated Case Party: JOHNFRANKLINCOOLEY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Anthony A.Petrocchi | | tpetrocchi@petrocchilaw.net | 10/23/2020 7:25:09 PM | SENT |

Duntov 000166