




**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 14, 2022**

Mark X. Mullin
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DUNTOV MOTOR COMPANY, LLC, | § | CASE NO. 21-40348-MXM-11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |

---

| | | |
|---|---|---|
| | § | |
| ALAN SEVADJIAN, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 21-04030 |
| | § | |
| TEXAS DEPARTMENT OF MOTOR VEHICLES, | § | |
| | § | |
| DEFENDANT. | § | |
| | § | |
| *CONSOLIDATED WITH* | § | |
| | § | |
| FRANCK RADENNE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |

| | |
|---|---|
| AND | § |
| | § |
| JOHN FRANKLIN COOLEY, JR., | § |
| | § |
| INTEVENOR, | § |
| | § |
| V. | § |
| | § |
| DUNTOV MOTOR COMPANY, LLC; ALAN SEVADJIAN; AND EDWARD SEVADJIAN, | § |
| | § |
| DEFENDANTS. | § |

**ORDER (i) GRANTING DEFENDANTS' MOTION TO RECONSIDER MSJ ORDER, (ii) SETTING ASIDE MSJ ORDER, AND (iii) REPLACING MSJ ORDER**

*[Relating to Adv. Nos. 4-41 and 33]*

Before the Court is the Motion to Reconsider[1] filed by Defendants Duntov Motor Company, LLC ("***Duntov***"), Mr. Alan Sevadjian, and Mr. Edward Sevadjian (together, the "***Defendants***"). The Motion to Reconsider requests this Court to reconsider the *Order Granting Plaintiff's Traditional and No Evidence Partial Motion for Summary Judgment* (the "***MSJ Order***")[2] that was entered by the State Court[3] on December 7, 2020, before that litigation was removed to this Court initiating this Adversary Proceeding.[4] The Court has reviewed, analyzed, and considered the Motion to Reconsider; the Response[5] filed by Plaintiff Mr. Franck Radenne ("***Mr. Radenne***"); the Reply[6] filed by Defendants; the relevant summary judgment pleadings,[7] the

---

[1] *Defendants' Motion for Reconsideration, to Amend Judgment, or Other Relief from Judgment of Plaintiff's Motion for Summary Judgment* [Adv. ECF No. 33] (the "***Motion to Reconsider***").
[2] Adv. ECF No. 4-41.
[3] This litigation was initially filed on January 29, 2020, in the 14th Judicial District Court of Texas, Cause Number DC-20-01121 (the "***State Court***").
[4] Adv. ECF No. 1.
[5] *Plaintiff Franck Radenne's Response in Opposition to Defendants' Motion for Reconsideration, to Amend Judgment, or Other Relief from Plaintiff's Motion for Summary Judgment* [Adv. ECF No. 37] and *Plaintiff Franck Radenne's Brief in Opposition to Defendants' Motion for Reconsideration, to Amend Judgment, or Other Relief from Plaintiff's Motion for Summary Judgment* [Adv. ECF No. 40] (together, the "***Response***").
[6] *Defendants' Reply in Support of Defendants' Motion for Reconsideration* [Adv. ECF No. 42] (the "***Reply***").
[7] Adv. ECF Nos. 4-26, 4-34, and 4-38.

summary judgment evidence[8] filed in the State Court, the transcript of the summary judgment hearing before the State Court; [9] and the arguments of counsel. After due consideration, the Court grants the Motion to Reconsider and sets aside and replaces the MSJ Order with this Order for the reasons detailed below.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the standing order of reference in this district. This Adversary Proceeding constitutes core proceedings over which the Court has statutory and constitutional authority to enter final orders and judgments pursuant to 28 U.S.C. § 157(b)(2)(A)(B)(C)(I)(K)(O). Even if this Court would not otherwise have the authority to enter a final judgment, the Court finds that Duntov, Mr. Radenne, Mr. Alan Sevadjian, and Mr. Edward Sevadijan have each consented to this Court's entering final orders and judgments in this Adversary Proceeding.[10] Intervenor Mr. John Franklin Cooley, Jr. ("***Mr. Cooley***"), has not yet filed his statement required by Rule 9027(g)(3). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. PROCEDURAL BACKGROUND

This litigation concerns a dispute over a custom-made, classic 1968 Chevrolet Corvette racecar (the "***Corvette***"). Various claims are pending by and between (i) Mr. Radenne, a potential buyer of the Corvette; (ii) Duntov, Mr. Alan Sevadijan, and Mr. Edward Sevadijian, the potential sellers of the Corvette; (iii) Mr. Cooley, a third-party that claims he owns the chassis, or body, of

[8] Adv. ECF Nos. 4-27, 4-34, and 4-35.
[9] Adv. ECF No. 40, Pgs. 107–137.
[10] Adv. ECF No. 1 at 3, ¶ 3 (Duntov); Adv. ECF No. 9 at 3, ¶ 4 (Mr. Radenne); Mr. Alan Sevadjian and Mr. Edward Sevadjian each consented to this Court entering final orders on the record during the status conference held on June 10, 2021.

the Corvette; and (iv) the Texas Department of Motor Vehicles (the "***TDMV***"), the state agency charged with regulating motor vehicles in the state of Texas.

On January 23, 2020, Mr. Alan Sevadjian filed a lawsuit against the TDMV in the State Court to have the TDMV issue a new VIN and certificate of title for the Corvette.[11]

On January 29, 2020, Mr. Radenne filed suit against Defendants in the 162nd Judicial District Court of Texas.[12]

On March 26, 2020, Mr. Cooley intervened in the lawsuit pending in the State Court.[13]

On April 20, 2020, the State Court entered its *Order Granting Motion to Transfer and Consolidate*[14] consolidating Mr. Radenne's lawsuit pending in the 162nd Judicial District Court of Texas into the lawsuit pending in the State Court.

On August 10, 2020, Mr. Radenne filed his Second Amended Petition[15] in the State Court.

On October 13, 2020, the Defendants filed their Answer and Counterclaim in the State Court.[16]

On October 23, 2020, Mr. Radenne filed the MSJ[17] seeking partial summary judgment in the litigation.

On November 30, 2020, Defendants filed their Response to the MSJ.[18]

On December 1, 2020, Mr. Radenne filed his Reply in Support of the MSJ.[19]

---

[11] Adv. ECF No. 4-2.
[12] *See* Adv. ECF No. 4-10, Pg. 2, ¶ 3.
[13] Adv. ECF No. 4-8.
[14] Adv. ECF No. 4-15.
[15] *Plaintiff's Second Amended Petition* [Adv. ECF No. 4-21] (the "***Second Amended Petition***").
[16] *Defendants' Third Amended Answer & Counterclaim Against Franck Radenne* [Adv. ECF No. 4-24] (the "***Answer and Counrterclaim***").
[17] *Plaintiff's Traditional and no Evidence Partial Motion for Summary Judgment* [Adv ECF Nos. 4-26 and 4-27] (the "***MSJ***").
[18] *Defendants' Response to Plaintiff's Traditional and no Evidence Motions for Summary Judgment* [Adv. ECF Nos. 4-34 and 4-35] (the "***Response to the MSJ***").
[19] *Plaintiff's Objections and Reply tin Support of his Tradition and no Evidence Partial Motion for Summary Judgment* [Adv. ECF No. 4-38] (the "***Reply in Support of the MSJ***").

On December 3, 2020, the MSJ came on for hearing in the State Court.[20] After hearing arguments from counsel and without providing any analysis for its ruling, the State Court stated, "I'm granting the summary judgment as prayed for."[21]

On December 7, 2020, the State Court entered the MSJ Order.[22]

On February 20, 2021, Duntov filed its *Voluntary Petition*[23] commencing the above-referenced Bankruptcy Case.

On May 17, 2021, Duntov filed its *Notice of Removal*[24] initiating the above-referenced Adversary Proceeding.

On October 5, 2021, Defendants filed their Motion to Reconsider.

On January 25, 2022, the Court conducted a hearing on the Motion to Reconsider.

## III. ANALYSIS

### A. Authority for Reconsideration

Although the Fifth Circuit notes that the Federal Rules of Civil Procedure do not explicitly recognize a motion for reconsideration, the Fifth Circuit has consistently recognized that such a motion may challenge a judgment or order under Rules 54(b), 59(e), or 60(b).[25] After a party removes an action to federal court, all orders and other proceedings in the first action prior to that action's removal remain in full force and effect until the federal court dissolves or modifies them.[26] Therefore, when a party removes a case to federal court, 28 U.S.C. § 1450 transforms interlocutory

---

[20] A transcript of the MSJ hearing before the State Court is at [Adv. ECF No. 40, Pgs. 107–137].
[21] Adv ECF No. 40, Pg. 128, line 2.
[22] Adv. ECF No. 4-41.
[23] Bankr. ECF No. 1.
[24] Adv. ECF No. 1.
[25] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990); *Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 3892810, at *6 (E.D. La. July 10, 2020).
[26] 28 U.S.C. § 1450; *Resol. Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1316 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir. 1988); *Dempster*, 2020 WL 3892810, at *7.

state court orders into orders of the federal court, and the federal court may treat those orders as if the federal court had entered those orders.[27]

The Fifth Circuit instructs that the Federal Rules govern the enforcement of the prior state court rulings when the case is removed.[28] If the state court decided a motion for summary judgment, the federal court must ensure that the order aligns with the requirements of Rule 56.[29] If the federal court does not reconsider the state court summary judgment, then the federal court certifies that the order aligns with Rule 56.[30]

Here, the MSJ Order granted partial summary judgment. In Texas, "an order granting a partial summary judgment, where there is no severance, is an interlocutory, non-appealable order."[31] Because the MSJ Order is an interlocutory order, this Court has authority to reconsider the MSJ Order as if this Court had entered the MSJ Order. Furthermore, this Court must determine whether the MSJ Order complies with the Federal Rules.

**B. Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of material facts[32] or where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.[33] "The moving party bears the burden of establishing that there are no genuine issues of material fact."[34] All "evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant."[35]

---

[27] *Kline*, 845 F.2d at 1304; *Dempster*, 2020 WL 3892810, at *7.
[28] *Northpark Joint Venture*, 958 F.2d at 1316; *Dempster*, 2020 WL 3892810, at *7.
[29] *Northpark Joint Venture*, 958 F.2d at 1316; *Dempster*, 2020 WL 3892810, at *7.
[30] *Northpark Joint Venture*, 958 F.2d at 1316 (5th Cir. 1992); *Dempster*, 2020 WL 3892810, at *7.
[31] *Mills v. Corvettes of Houston, Inc.*, 44 S.W.3d 197, 199 n. 1 (Tex. App.—Houston [14th Dist.] 2001, no pet.).
[32] FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056(a).
[33] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)).
[34] *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).
[35] *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 465 (5th Cir. 2005).

If the dispositive issue is one that the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by (i) merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim[36] or (ii) showing that the nonmoving party cannot produce admissible evidence on an essential element of the claim.[37]

The burden then shifts to the nonmoving party who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists on each of the essential elements for each claim.[38] "The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial."[39] Therefore, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact," summary judgment is proper.[40]

### C. Objections to Summary Judgment Evidence

Each party filed objections to the summary judgment evidence in the summary judgment record. The Court will address each objection, in turn.

#### ***1. Defendants' Objections to Mr. Radenne's Summary Judgment Evidence***

In the Response to the MSJ, Defendants raised two objections to Mr. Radenne's summary judgment evidence.

##### *a. Defendants' First Objection*

Defendants' first objection is to paragraph twenty-three of the *Declaration of Franck Radenne in Support of Plaintiff's Traditional and No Evidence Partial Motion for Summary*

---

[36] *Norwegian Bulk Transp.*, 520 F.3d at 412 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *see also* 11 MOORE'S FEDERAL PRACTICE—Civil § 56.40 (2021) (citing FED. R. CIV. P. 56(c)(1)(A)).
[37] *See* 11 MOORE'S FEDERAL PRACTICE—Civil § 56.40 (2021).
[38] *Norwegian Bulk Transp.*, 520 F.3d at 412 (citing *Celotex Corp.*, 477 U.S. at 324).
[39] *Id.*
[40] *Celotex Corp.*, 477 U.S. at 322 (citing FED. R. CIV. P. 56(c)(1)(A)).

*Judgment*.[41] Defendants object to the specific portion that states, "I have and continue to suffer mental and emotional distress and anxiety as a result of being deceived by Defendants who now refuse to return my money."[42] Defendants object to this statement as being conclusory and not the best evidence of said alleged condition. The Court overrules this objection, but in ruling on this Motion to Reconsider, the Court gave this statement little, if any, weight.

*b. Defendants' Second Objection*

Defendants' second objection is to paragraphs thirteen, twenty-three, twenty-four, twenty-five, and twenty-six of the *Declaration of Kevin Mackay in Support of Plaintiff's Traditional and No Evidence Partial Motion for Summary Judgment*.[43] Defendants object to the statements in the relevant portion of the record as lacking foundation, irrelevant, and being made by an unqualified expert witness.[44] The Court overrules this objection, but in ruling on this Motion to Reconsider, the Court gave these statements little, if any, weight.

***2. Mr. Radenne's Objections to the Response to the MSJ***

Mr. Radenne raised four objections to the summary judgment evidence offered by the Defendants in support of their Response to the MSJ.

*a. Mr. Radenne's First Objection*

Mr. Radenne objects to Defendants' exhibit A-1 of the Response to the MSJ,[45] which are various email exchanges between Mr. Radenne and Mr. Alan Sevadjian. Specifically, Mr. Radenne objects to these emails as unauthentic.

"To satisfy the requirements of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent

---

[41] Adv. ECF No. 4-34, Pg. 2 (the objection); Adv. ECF No. 4-27, Pg. 6 (the relevant portion of the record).
[42] Adv. ECF No. 4-34, Pg. 2 (the objection); Adv. ECF No. 4-27, Pg. 6 (the relevant portion of the record).
[43] Adv. ECF No. 4-34, Pg. 2 (the objection); Adv. ECF No. 4-27, Pgs. 38–40 (the relevant potions of the record).
[44] Adv. ECF No. 4-34, Pg. 2 (the objection).
[45] Adv. ECF No. 4-38, Pgs. 4–5 (the objection); Adv. ECF No. 4-34, Pgs. 29–38 (the relevant portions of the record).

claims it to be."[46] "The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" can satisfy the requirements of authentication.[47]

For purposes of this ruling only, Defendants' emails are authenticated. Specifically, exhibit A-1 is a chain of email conversations between the litigating parties, and Mr. Radenne has offered emails from this chain as summary judgment evidence. The content of Defendants' emails aligns with the content from Mr. Radenne's emails and completes the email chain that Mr. Radenne provided. As such, Defendants' exhibit is sufficient to support a finding that Defendants' exhibit A-1 is the thing it purports to be, and the Court overrules Mr. Radenne's objection.

*b. Mr. Radenne's Second Objection*

Mr. Radenne objects to paragraph seven of the *Unsworn Declaration of Alan Sevadjian*.[48] Specifically, Mr. Radenne objects to the statement of, "Plaintiff agreed to purchase the 5-VIN (frame, front fenders, doors, and roll cage) as a [Federation Internationale de l'Automobile ("***FIA***")] approved racing Corvette . . . ."[49] Mr. Radenne argues that this statement lacks foundation and there are no facts that support the conclusion that Mr. Radenne agreed to purchase the 5-VIN Corvette or that the 5-VIN was, at the time of the Bill of Sale, an FIA-approved racing Corvette. For purposes of this ruling only, the Court overrules this objection, but in ruling on this Motion to Reconsider, the Court gave this statement little, if any, weight.

*c. Mr. Radenne's Third Objection*

Mr. Radenne objects to Defendants' exhibit C-3 of the Response to MSJ.[50] Exhibit C-3 is a collection of documents from the TDMV. Mr. Radenne objects to these documents to the extent

[46] FED. R. EVID. 901(a).
[47] FED. R. EVID. 901(b)(4).
[48] Adv. ECF No. 4-38, Pg. 5 (the objection); Adv. ECF No. 4-34, Pg. 26 (the relevant portion of the record).
[49] Adv. ECF No. 4-38, Pg. 5 (the objection).
[50] Adv. ECF No. 4-38, Pg. 6 (the objection); Adv. ECF No. 4-35, Pgs. 35–55 (the relevant portions of the record).

that these documents are hearsay and not subject to the hearsay exception for business records because the documents are not certified copies or accompanied by an affidavit that establishes the documents as business records.[51]

The rule against hearsay precludes an out of court statement that is offered to prove the truth of the matter asserted therein.[52] There are numerous exceptions and exemptions to the rule against hearsay, and one exception is the public record exception.[53] A public record is excepted from the rule against hearsay if the public record sets out the public office's activities and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.[54]

For purposes of this ruling only, the records are excepted from the rule against hearsay under the public record exception. First, the first page of exhibit C-3 proves that the TDMV is the public department that stores information and history related to motor vehicles. Second, other than stating that the records from TDMV are not a certified copy or accompanied with an affidavit, Mr. Radenne provides no reason to indicate that the documents are untrustworthy. Specifically, the custodian of records, Mr. Frances Alvarado, certified that the documents were true and correct copies. Further, Mr. Hanh's affidavit rebuts Mr. Radenne's arguments that no affidavit is attached to the documents. Therefore, for purposes of this ruling only, the fact that there is no accompanying affidavit from TDMV is outweighed by the lack of a persuasive reason to believe that the documents from TDMV are untrustworthy. Therefore, the Court overrules Mr. Radenne's objections to exhibit C-3.

[51] Adv. ECF No. 4-38, Pg. 6 (the objection).
[52] FED. R. EVID. 801–802.
[53] FED. R. EVID. 803(8).
[54] FED. R. EVID. 803(8).

*d. Mr. Radenne's Fourth Objection*

Mr. Radenne objects to Defendants' exhibit C-4 of the Response to the MSJ.[55] Exhibit C-3 is the *Franchise Tax Account Status* for Duntov, reflecting Duntov's status as an LLC. Mr. Radenne objects to this document to the extent that it is hearsay and not subject to the hearsay exception for a business record because the document is not a certified copy or accompanied by an affidavit that establishes the document as a business record.[56]

For purposes of this ruling only, this record is not excepted from the rule against hearsay under the business record exception or the public record exception. First, the document does not set out any duties for any public office. Second, unlike the TDMV documents above, Mr. Radenne provides sufficient evidence and argument that this document is untrustworthy. While Mr. Hanh's affidavit affirms that this document is the thing it purports to be, Mr. Hanh is not the custodian of records to certify that this document is the thing it purports to be. Because of these two reasons, the Court sustains Mr. Radenne's hearsay objection to exhibit C-4.

**D. Causes of Action for which Mr. Radenne seeks Summary Judgement**

In his MSJ, Mr. Radenne seeks summary judgment on certain, but not all, causes of action asserted in the Second Amended Compliant. Therefore, the Court will address, in turn, each count in the Second Amended Complaint for which Mr. Radenne seeks summary judgment.

***1. Count I—Breach of Contract***

The MSJ argued that Defendants breached the contract between the parties, which is memorialized by the Bill of Sale, because Defendants failed to deliver a 1968 Corvette or return Mr. Radenne's moneys. Defendants argued that (i) Mr. Radenne did not fully perform under the contract or that Mr. Radenne was not excused from performing under the contract; (ii) Defendants

[55] Adv. ECF No. 4-38, Pg. 6 (the objection); Adv. ECF No. 4-35, Pg. 56 (the relevant portions of the record).
[56] Adv. ECF No. 4-38, Pg. 6 (the objection).

did not breach the contract; and (iii) even if there was a breach of contract, Defendants did not cause Mr. Radenne's injuries.

In Texas, to prove a breach of contract claim, a plaintiff must show (i) a valid contract existed between the plaintiff and defendant; (ii) the plaintiff tendered performance or was excused from performing; (iii) the defendant breached the terms of the contract; and (iv) the plaintiff sustained damages because of the defendant's breach.[57]

For purposes of this ruling only, when viewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that there are genuine disputes of material fact for whether there was a breach of contract. First, a material factual dispute exists for whether the Corvette is the 1968 Corvette that is the subject of the contract. Second, given that the contract was silent regarding a completion date (the Bill of Sale appears to only contemplate a suggested finish date), there is a genuine factual dispute for whether Defendants breached the contract.

***2. Count II—Breach of Warranties***

The MSJ argued that Defendants breached the implied warranty that the Corvette's title was good and rightful, and that Defendants breached the express warranty that the Corvette was in fact a 1968 Corvette. Defendants argued that there was no breach of any warranties and that if there were breaches of warranties, then Defendants' breaches were not the producing cause of Mr. Radenne's injuries.

*a. Breach of Implied Warranty of Title*

The elements of a cause of action for breach of implied warranty of title are that (i) the defendant sold goods to the plaintiff, (ii) the defendant conveyed bad title to the plaintiff, and (iii) the plaintiff suffered injury.[58] Bad title is established as a matter of law when a defendant conveys

---

[57] *Turner v. Ewing*, 625 S.W.3d 510, 518 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).
[58] Tex. Bus. & Com. Code § 2.312(a) and (c); Tex. Bus. & Com. Code § 2.607(c)(1).

title to property that the defendant does not own.[59] The conveyance of bad title can be proved by evidence that the defendant sold stolen property.[60]

For purposes of this ruling only, when viewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that genuine disputes of material fact exist for whether Defendants breached any implied warranties. For example, the certificate of title for the Corvette from 2012 reflects that the Corvette was sold to Defendants. Moreover, a trial on the merits for ownership of the Corvette and whether the Corvette was stolen, as alleged by Mr. Cooley, will determine whether Defendants could pass title to Mr. Radenne.

*b. Breach of Express Warranty*

To succeed on a claim for a breach of express warranty, the plaintiff must prove (i) the defendant made a representation to the plaintiff about the title, quality, or characteristics of the goods; (ii) the defendant made that representation by affirmation of fact, promise, description, or display of a sample or model; (iii) the representation became part of the "basis of the bargain;" (iv) the goods did not comply with the representation; and (v) the plaintiff suffered injury.[61] "Basis of the bargain" is akin to reliance.[62]

For purposes of this ruling only, when viewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that genuine disputes of material fact exist for whether Defendants breached any express warranties. For example, material fact issues exist related to whether the Corvette is the 1968 Corvette that Defendants contracted to sell to Mr. Radenne.

---

[59] *Kirby Forest Indus. v. Dobbs*, 743 S.W.2d 348, 355 (Tex. App.—Beaumont 1987, writ denied).

[60] *See Saenz Motors v. Big H. Auto Auction, Inc.*, 653 S.W.2d 521, 525 (Tex. App.—Corpus Christi 1983), *aff'd*, 665 S.W.2d 756 (Tex. 1984).

[61] Tex. Bus. & Com. Code § 2.313; *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.).

[62] *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997).

### *3. Count III—Deceptive Trade Practices Act*

The MSJ argued that Defendants violated the DTPA by misrepresenting the presence of the VIN on the frame of the Corvette, that the Corvette was a 1968 Corvette, and that Mr. Radenne was the legal owner of the Corvette based on the Bill of Sale. Moreover, Mr. Radenne argued that he is entitled to damages for mental and emotional distress and treble damages because Defendants knowingly engaged in deceptive acts. Defendants argued that they cannot be sued under the DTPA due to the expiration of the statute of limitations; that Defendants did not engage in false, misleading, or deceptive acts; and that Defendants were not the producing cause of Mr. Radenne's injuries.

To succeed under a DTPA claim, a plaintiff must show that (i) the plaintiff was a consumer; (ii) the defendant can be sued under the DTPA; (iii) the defendant committed at least one wrongful act that § 17.46(b) of the Texas Business & Commerce Code enumerates, breached an express or implied warranty, or engaged in an unconscionable action; and (iv) the defendant's action was a producing cause of the plaintiff's damages.[63] Plaintiffs can recover mental anguish damages and treble damages if a defendant knowingly or intentionally violated the DTPA.[64]

For purposes of this ruling only, when viewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that there are genuine disputes of material fact for whether Defendants violated the DTPA. For example, whether the Corvette is the 1968 Corvette that is the subject of the contract and who is the true owner of the Corvette are material factual disputes.

---

[63] Tex. Bus. & Com. Code §§ 17.41–17.63; *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).
[64] Tex. Bus. & Com. Code § 17.50(b)(1).

### *4. Count IV—Common Law Fraud*

The MSJ argued that Defendants fraudulently misrepresented that the Corvette was a 1968 Corvette and that the chassis had a factory inscribed VIN to induce Mr. Radenne to purchase the Corvette from Defendants to Mr. Radenne's detriment. Defendants argued that (i) any misrepresentation that they made was immaterial; (ii) Defendants did not make any misrepresentations; (iii) if Defendants made any misrepresentation, then those misrepresentation were not made knowingly or with a reckless disregard to the truth; and (iv) Defendants' representations did not cause Mr. Radenne's injuries.

To succeed on an action for common law fraud, the plaintiff must prove that (i) the defendant made a materially false representation to the plaintiff; (ii) the defendant knew the representation was false or recklessly made the representation; (iii) the defendant made the representation with the intent that the plaintiff act on the misrepresentation; (iv) the plaintiff relied on the misrepresentation; and (v) the misrepresentation caused the plaintiff's injuries.[65] Although not impossible, proving an issue involving intent at the summary judgment stage is rarely proper.[66]

For purposes of this ruling only, when viewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that there are genuine disputes of material fact for whether Defendants are liable for common law fraud. For example, whether Defendants intended for Mr. Radenne to act on any misrepresentation is disputed. Moreover, whether Defendants made any misrepresentation regarding the Corvette is also disputed.

### *5. Count IX—Alter ego*

The MSJ argued that Mr. Alan Sevadjian and Mr. Edward Sevadjian were the alter egos of Duntov because (i) title to the Corvette was in Mr. Alan Sevadjian's personal name while Duntov

---

[65] *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019).
[66] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996).

made payments on the Corvette, and (ii) Duntov did not maintain its limited liability status with the state of Texas. Defendants argued that there are factual disputes for whether Mr. Alan Sevadjian and Mr. Edward Sevadjian were the alter egos of Duntov.

Alter ego applies when the unity between a corporation and an individual is such that holding only the corporation liable would be unjust.[67] A plaintiff shows alter ego through the total dealings of the corporation and the individual, which includes (i) the degree that corporate formalities have been followed and corporate and individual property have been kept separate; (ii) the amount of financial interest, ownership, and control the individual maintains over the corporation; and (iii) whether the corporation has been used for personal purposes.[68] Alter ego disputes are highly factual disputes.

For purposes of this ruling only, when viewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that there are genuine disputes of material fact for whether Mr. Alan Sevadjian, Mr. Edward Sevadjian, and Duntov are alter egos. For example, the degree of following corporate formalities is a material factual dispute.

### E. Defendants' Counterclaim for Breach of Contract and Sanctions and assertion of various Affirmative Defenses

The MSJ argued that Defendants offered no evidence to support their two Counterclaims or to support their seventeen asserted Affirmative Defenses. Defendants argued that there is evidence in the summary judgment record to support both of their Counterclaims and for each of the disputed seventeen Affirmative Defenses.

When viewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that sufficient summary judgment evidence exists to establish genuine disputes of

---

[67] *See* Tex. Bus. Orgs. Code § 21.223(b); *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986).
[68] *Castleberry*, 721 S.W.2d at 272.

material facts for the Defendants' counterclaim for breach of contract, but not for the Defendants' counterclaim for sanctions. Therefore, the Defendants' counterclaim for sanctions is hereby denied and dismissed as requested in the MSJ.

Further, when viewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that sufficient summary judgment evidence exists to establish genuine disputes of material facts in support of each of the Defendants' alleged Affirmative Defenses, **except** for the following alleged Affirmative Defenses: (i) Equitable Estoppel, (ii) Laches, (iii) Unclean Hands, (iv) Contributory Negligence, (v) Unavoidable Accident or Act of God, and (vi) Fraud, each of which are hereby denied and dismissed as requested in the MSJ.

## IV. CONCLUSION

The summary judgment record, when viewed in the light most favorable to Defendants, contains sufficient admissible evidence to establish that there are genuine issues of material fact in response to each of the causes of action asserted by Mr. Radenne in the Second Amended Petition.

In addition, when reviewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that the summary judgment record contains sufficient admissible evidence to establish that there are genuine issues of material fact in support of Defendants' counterclaim for breach of contract, but not for the Defendant's counterclaim for sanctions. Therefore, the Defendants counterclaim for sanctions is hereby denied and dismissed.

Finally, when reviewing the summary judgment evidence in the light most favorable to Defendants, the Court finds that sufficient summary judgment evidence exists to establish genuine disputes of material facts in support of each of the Defendants' alleged Affirmative Defenses, **except** for the following alleged Affirmative Defenses: (i) Equitable Estoppel, (ii) Laches, (iii) Unclean

Hands, (iv) Contributory Negligence, (v) Unavoidable Accident or Act of God, and (vi) Fraud, each of which are hereby denied and dismissed as requested in the MSJ.

Therefore, for the reasons detailed above, the Court **ORDERS** as follows:

1. The Motion to Reconsider is **GRANTED**.

2. The MSJ Order is **SET ASIDE** and **REPLACED** by this Order.

3. The MSJ is **GRANTED**, in part, to dismiss the Defendants' counterclaim of sanctions and such counterclaim is **DISMISSED**.

4. The MSJ is **GRANTED**, in part, to dismiss the Defendants' following asserted Affirmative Defenses: (i) Equitable Estoppel, (ii) Laches, (iii) Unclean Hands, (iv) Contributory Negligence, (v) Unavoidable Accident or Act of God, and (vi) Fraud, each of which are hereby **DISMISSED**.

5. All other relief sought in the MSJ and the Response to MSJ that is not specifically granted in this Order is hereby **DENIED**.

**### END OF ORDER ###**