Derrick J. Hahn
Matthew S. Hahn
Hahn Law Firm, P.C.
900 Jackson Street; Suite 180
Dallas, TX 75202
(214) 744-3200
(214) 744-3202 fax

ATTORNEYS FOR DEBTOR,
ALAN SEVDJIAN, AND EDWARD SEVDJIAN

Hudson Jobe, Esq.
John Paul Stanford, Esq.
Quilling, Selander, Lownds,
Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Fax)

BANKRUPTCY COUNSEL FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DUNTOV MOTOR COMPANY LLC, | § | CASE NO. 21-40348-mxm11 |
| | § | (Chapter 11) |
| <u>DEBTOR</u> | § | |
| | § | |
| ALAN SEVADJIAN, | § | ADV. NO. 21-04030-mxm |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| MOTOR VEHICLES, | § | |
| Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN FRANKLIN COOLEY, JR. | § | |
| Intervenor, | § | |
| | § | |
| *v.* | § | |
| | § | |
| UPS Capital Business Credit | § | |

**DUNTOV MOTOR COMPANY, LLC'S AMENDED COMPLAINT**   **EXHIBIT 1**   **Page 1**

| | |
|---|---|
| *CONSOLIDATED WITH* | § |
| | § |
| FRANCK RADENNE, | § |
|     Plaintiff, | § |
| | § |
| v. | § |
| | § |
| DUNTOV MOTOR COMPANY, LLC, | § |
| ALAN SEVADJIAN, and | § |
| EDWARD SEVADJIAN, | § |
|     Defendants. | § |

## DUNTOV MOTOR COMPANY, LLC & ALAN SEVADJIAN'S AMENDED COMPLAINT

Duntov Motor Company, LLC and Alan Sevadjian ("Plaintiffs herin") file their Amended Complaint as follows

## I.
## PARTIES

1. Plaintiff Duntov Motor Company LLC is a Texas LLC and may be served in this action via the undersigned counsel. Plaintiff Alan Sevadjian is a Texas resident and also may be served in this action via the undersigned counsel.

2. Defendant Franck Radenne (hereinafter referred to as "Radenne") is an individual that has appeared in this action and may be served in this action via Mark A. Castillo, CURTIS | CASTILLO PC, 901 Main Street, Suite 6515, Dallas, Texas 75202.

3. Defendant John Cooley, Jr. (hereinafter referred to as "Cooley") is an individual that has appeared in this action and may be served in this action via Anthony A. Petrocchi, ANTHONY A. PETROCCHI, P.C., 5127 Spyglass Drive, Dallas, Texas 75287.

4. Defendant Texas Department of Motor Vehicles has appeared in this action and may be served via Mayson Pearson, Texas Department of Motor Vehicle, Associate General Counsel, 4000 Jackson Avenue, Austin, TX 78731.

5. Defendant UPS Capital Business Credit has appeared in the bankruptcy case and may be served via Michael P. Menton, Will G. Bassham, SettlePou, 3333 Lee Parkway, Eighth Floor, Dallas, Texas 75219.

## II.
## JURISDICTION AND VENUE

6. Duntov Motor Company LLC (hereinafter referred to as "Duntov"), a debtor in the above-captioned chapter 11 bankruptcy case, filed a nnotice of removal, initiating the above-captioned adversary proceeding, on May 17, 2021. Venue is proper in this Court because Duntov is a debtor before this Court and certain of the claims in this adversary proceeding are related to the bankruptcy case. *See* 28 U.S.C. §§ 1408, 1409. This Court has jurisdiction over the claims in this adversary proceeding that are related to the bankruptcy case and/or claims that arise in or arise under the bankruptcy code. *See* 28 U.S.C. § 1334.

7. Duntov and Alan Sevadjian consent to the bankruptcy Court's entry of final orders and judgments as to all claims in this proceeding. *See* Bankruptcy Rule 9027(e)(3).

## III.
## STATEMENT OF FACTS

8. Alan Sevadjian (hereinafter referred to as "Alan") is the founder of Duntov and has worked in the Corvette automotive racing, restoration, and modification industry for over fifty (50) years.

9. Edward Sevadjian (hereinafter referred to as "Edward") is the son of Alan and took over ownership of Duntov in 2006. Edward has worked in the Corvette automotive racing, restoration, and modification industry for fifteen (15) years. He is also a two-time world racing champion and coaches race car drivers.

10. The name "Duntov" was incorporated into the name of Alan's business because Zora Duntov was the engineer that worked at GM that was instrumental in the success of the Corvette. Alan personally met with Mr. Duntov's widow and was granted permission to use the Duntov name for the business. Mrs. Duntov allowed Alan to use the name due in part to his vast experience with Corvettes. In fact, Duntov was licensed by General Motors to build a replica and continuation Grand Sports Corvette from 2009-2019. Duntov also provides a team to work in the pits to support cars at races.

11. Chevrolet manufactures Corvette vehicles. All Chevrolet Corvettes manufactured in the St. Louis, Missouri factory, prior to 1981 are assigned an "S" as the seventh character of their vehicle identification number ("VIN"). The last six digits of the VIN represent the vehicle's serial number.

12. In or about 1968, Chevrolet apparently manufactured and assembled a Corvette in its St. Louis, Missouri factory which was originally assigned VIN 194678S422741.

13. In or about 2012, Omer J. Hanna owned the above referenced 1968 Corvette (hereinafter referred to as the "Vehicle").

14. On May 21, 2012, an Original Petition was filed by Omer J. Hanna (hereinafter referred to as "Hanna") against the Texas Department of Transportation in a county court in Brown County, Texas, seeking an order from that court assigning VIN 194678_5_422741 to the Vehicle and issuing a certificate of title for the Vehicle to him.

15. On June 29th, 2012, the above referenced county court in Brown County, Texas, issued an order directing the Texas Department of Motor Vehicles to assign VIN 194678_5_422741 to the Vehicle (hereinafter referred to as the "5-VIN") and to issue title bearing the 5-VIN to Hanna.

16.     In or around 2015, Hanna communicated with Alan and agreed to sell the Vehicle to Alan and Duntov.  Alan and Duntov relied on representations made by Hanna as to the 1968 year model and VIN of the Vehicle at the time the Vehicle was purchased from Hanna.  At that time the Vehicle consisted of a frame, fenders, and several body components and was not complete nor assembled.

17.     In 2018, Radenne contacted Duntov and Alan regarding his pursuit of C3 Corvette racing car project.  A C3 Corvette refers to the model years 1968-1982.  Radenne was seeking to purchase and modify a C3 Corvette for use in races through the Federation Internationale de L'Automobile (hereinafter referred to as "FIA"), a European-based racing association.

18.     Radenne contacted Duntov because it is well known in the in the racing industry as being the best fabricators and manufacturers of vintage racing cars in the world.  Alan is one of the most knowledgeable people in the country regarding Corvettes and has himself purchased and sold hundreds of Corvettes.

19.     In or around May of 2018, Alan offered to sell the Vehicle to Radenne, which consisted of a C3 Corvette frame with roll-cage and body components that Radenne could use for the project.  Alan also explained that upgrades offered to customers in the past included later model frames because they are 70 pounds lighter.  Alan also indicated that Radenne had two choices for the body style being either a T-top style coupe or a convertible with a removable hard top.

20. In or around June 8, 2018, Radenne agreed to purchase the Vehicle from Duntov which was to be modified by Duntov to meet Radenne's and FIA specifications. The terms of the purchase provided no deadline to complete the project.

21. Radenne was provided a photograph of the Vehicle he was buying that would serve as the starting point for the project. That photograph (see below) showed a bare frame with doors, front fenders, and a custom-built racing roll cage. The purchase price for the frame with roll cage was listed in the agreement for $10,000.00. The agreement also shows that approximately $95,000.00 worth of components would be added to that shell to make it into a race car. All of the other major components of the car would be added by Duntov including the engine, transmission, suspension, tires, wheel, brakes, radiator, rear end, steering system, glass, dash, and interior, to name a few.



22. Radenne requested that Duntov provide a bill of sale for the Vehicle, which was created and provided to Radenne to honor that request, but it was not viewed by Duntov as the contract between the parties. Radenne wanted the bill of sale drafted in a way to minimize the value of the basic car purchase to avoid paying customs taxes and fees. Alan prepared the bill of sale using the VIN on the title to the Vehicle issued by the state of Texas. Alan confirmed the VIN matched the title by looking at the VIN plate affixed to the car by the Texas Department of Public Safety.

23. Upon reviewing the bill of sale, Radenne pointed out that the seventh digit should be an "S" instead of a "5." Alan then took the Vehicle to the Sheriff's Department Theft Division twice to have it inspected in an effort to resolve the VIN number issue. The conclusion drawn was that the VIN number discrepancy was apparently the result of the inspecting officer's mistake in Brown County, Texas.

24. From June 2018 through November 2019, Radenne provided multiple progress payments to Duntov, as well as discussed and implemented multiple change orders to the modifications of the Vehicle. Radenne had contracted for a race car to be built to compete in FIA races and that is exactly what Duntov was providing. Alan also advised that racing organizations are not concerned with the registration or titles of the cars and that entrants are not even required to present the title of the car to enter it into a race.

25. On or about October 15, 2019, Radenne requested that the Vehicle be completed by an "ultimate deadline" of mid-February 2020. On January 21, 2020, Alan filed suit against the Texas Department of Motor Vehicles to have the VIN corrected as requested by Radenne (hereinafter referred to as the "DMV action).

26. On January 29, 2020, prior to the mid-February deadline, Radenne filed suit against Duntov, Alan, and Edward. On or about February 6, 2020, Radenne also issued a letter to them demanding that they cease all work on the Vehicle.

27. On or about March 26th, 2020, Cooley intervened into the DMV action alleging that the Vehicle subject of that suit was in fact a certain 1968 Corvette bearing Vehicle Identification Number 194378S422741 that was allegedly purchased by him in or about 1975 and later stolen from him (hereinafter referred to as the "Cooley's Corvette"). Cooley was seeking, among other things, a declaratory judgment that title to the Vehicle be declared in his name and that he be declared to have an immediate and superior right to possession of the Vehicle.

28. A subsequent inspection and inventory of the components of the Vehicle has revealed the following. The frame on the Vehicle could not be from Cooley's Corvette because the frame is not from a 1968 model Corvette at all, but rather that of a later model Corvette.

29. Additionally, when Alan purchased the Vehicle, it did not even have an engine. The current engine in the Vehicle was actually built from two other engines purchased separately from other parties by Duntov after Alan purchased the Vehicle.

30. The Brown County Court documents pertaining to the Vehicle indicate that the transmission in the Vehicle at the it was owned by Hanna had been obtained by him from a third party. Moreover, the transmission that is currently in the Vehicle was actually purchased by Duntov after Alan purchased the Vehicle.

31. The body of the Vehicle cannot be the original body of Cooley's Corvette, as the Brown County Court documents indicate that Hanna purchased the body of the Vehicle separately from the frame and that the body was a "1968 Corvette <u>Convertible</u> Body" rather than the coupe body that was on Cooley's Corvette.

32. The wheels and brakes of the Vehicle are not the wheels and brakes of Cooley's Corvette as they were purchased by Duntov from another party after Alan's purchase of the Vehicle.

33. Finally, numerous other component were incorporated into the Vehicle in that it has obviously undergone a substantial modification into a racecar. Radenne owes about $9,000.00 still remaining for the modification of the Vehicle built by Duntov. The Vehicle has a market value in its current condition of approximately $100,000.00 to $130,000.00.

## V.
## CAUSES OF ACTION

### SUIT FOR DECLARATORY RELIEF AGAINST TEXAS DEPARTMENT OF MOTOR VEHICLES

34. Plaintiffs Duntov and Alan incorporate by reference paragraphs 8 through 33 as if fully set forth herein.

35. This action involves the incorrect assignment of VIN 1946785422741 to the above referenced Vehicle in Case No. 8466 in the County Court of Brown County, Texas. The Vehicle was originally manufactured as and assigned VIN 194678S422741.

36. Alan seeks to correct the VIN on the Vehicle to correctly reflect the VIN it was assigned when it was originally manufactured. Alan seeks a declaration of the Court that title of the Vehicle is vested in Alan and/or Duntov and that the current and incorrectly assigned VIN be

reassigned by the Texas Department of Motor Vehicles from VIN 194678<u>5</u>422741 to VIN 194678<u>S</u>422741.

37. All conditions precedent to Alan's claim for relief have been performed or have occurred.

38. Alan is entitled to recover reasonable and necessary attorney fees that are equitable and just under Texas Civil Practice & Remedies Code Section 37.009 because this is a suit for declaratory relief. In the event of an appeal to the Court of Appeals and/or a further appeal to the Supreme Court, a further sum would be due to Alan as reasonable attorney's fee.

<u>SUIT FOR DECLARATORY RELIEF AGAINST
JOHN FRANKLIN COOLEY, JR.</u>

39. Plaintiffs Duntov and Alan incorporate by reference paragraphs 8 through 33 as if fully set forth herein.

40. Alan seeks a declaration from the Court that the frame of the Vehicle is not that of a 1968 corvette and specifically not the frame of Cooley's Corvette.

41. Alan seeks a declaration from the Court that the engine of the Vehicle is not that of Cooley's Corvette.

42. Alan seeks a declaration from the Court that the transmission of the Vehicle is not that of Cooley's Corvette.

43. Alan seeks a declaration from the Court that the wheels, brakes, and other ancillary component parts obtained and installed by Duntov are not that of Cooley's Corvette.

44. Alan seeks a declaration from the Court that the Vehicle cannot be the Cooley's Corvette, therefore Cooley's claim for declaratory relief must be denied.

45. All conditions precedent to Alan's claim for relief have been performed or have occurred.

46. Alan is entitled to recover reasonable and necessary attorney fees that are equitable and just under Texas Civil Practice & Remedies Code Section 37.009 because this is a suit for declaratory relief. In the event of an appeal to the Court of Appeals and/or a further appeal to the Supreme Court, a further sum would be due to Alan as reasonable attorney's fee.

## CLAIM FOR BREACH OF CONTRACT AGAINST FRANCK RADENNE

47. Plaintiffs Duntov and Alan incorporate by reference paragraphs 8 through 33 as if fully set forth herein.

48. Duntov was performing under a Contract with Radenne to prepare the Vehicle to leave Duntov's shop by mid-February.

49. Radenne breached the Contract by suing Duntov and Alan related to the Vehicle prior to Radenne's "ultimate deadline" of mid-February by filing suit and issuing a stop work order on the Vehicle.

50. All conditions precedent to Duntov's performance have occurred.

51. As a result of the breach of contract by Radenne, Duntov has suffered damages.

52. Duntov is entitled to recover reasonable attorney fees or such other sums the evidence shows because this is a claim on an oral or written contract within the meaning of Civil Practice and Remedies Code Section 38.001. Duntov perfected its right to fees under this statute in that it agreed and was ready to perform under the agreement the parties made. The agreement was made, in part, by means of an email sent to Duntov on or about October 15, 2019.

53. In the event of an appeal to the Court of Appeals and/or a further appeal to the Supreme Court, a further sum would be due to Duntov as a reasonable attorney's fee.

## CLAIM FOR DETERMINATION OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS IN THE CONTESTED CORVETTE VEHICLE

54. The Debtor's current Chapter 11 Plan has the following treatment for the parties asserting claims against the Contested Corvette Vehicle:

> 5.8. <u>Class 8 – Claims against the Contested Corvette Vehicle</u>. Class 8 includes all Claims related to the Contested Corvette Vehicle that is the subject of the Pending Litigation, whether such claims have been raised or not, including but not limited to the Contested Claims and other interests have been or could be asserted by Franck Radenne, John Franklin Cooley, Jr., the Debtor, the Texas Department of Motor Vehicles, UPS Capital Business Credit, or any other party. The respective rights and obligations of all parties related to the Contested Corvette Vehicle are all Contested and shall be adjudicated by Final Order, including but not limited to the Contested Claims of Frank Radenne in Proof of Claim No. 6 and of John Franklin Cooley, Jr. in Proof of Claim No. 9, and any competing claims of ownership and/or Lien validity and priority between Franck Radenne, UPS Capital Business Creditor and John Franklin Cooley, Jr. All Allowed Class 8 Claims that are not satisfied by acquisition of the Contested Corvette Vehicle in kind or proceeds from the Contested Corvette Vehicle shall be considered General Unsecured Claims.
>
> In addition to all other sale rights under the Plan, the Debtor shall have the right to sell the Contested Corvette Vehicle free and clear of all liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(f) after Confirmation of the Plan at any time, and to deposit the net proceeds remaining after costs of sale and maintenance into the registry of the Bankruptcy Court for further disposition following the adjudication of the parties' rights related to the Contested Corvette Vehicle. In addition to all other rights to settle Claims in the Plan, the Debtor shall have the right to resolve and settle all alleged liens, claims, encumbrances, and other interests in or against the Contested Corvette Vehicle. The Debtor reserves all rights regarding the Contested Corvette Vehicle and the proceeds from same, including to surcharge such property under 11 U.S.C. § 506(b).

55. The Debtor requests the Court to declare the rights and obligations of the Debtor and Defendants with respect to the Contested Corvette Vehicle.

Respectfully Submitted,

QUILLING, SELANDER, LOWNDS,
WINSLETT &MOSER, P.C.

*/s/ Hudson M. Jobe*
State Bar No. 24041189
2001 Bryan St., Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Fax)
hjobe@qslwm.com

BANKRUPTCY COUNSEL FOR
DUNTOV MOTOR COMPANY, LLC


HAHN LAW FIRM, P.C.

*/s/ Derrick J. Hahn*
Derrick J. Hahn
State Bar No. 24026920
dhahn@hahnlawfirm.com
Matthew S. Hahn
State Bar No. 24104522
mhahn@hahnlawfirm.com
900 Jackson Street; Suite 180
Dallas, TX  75202
(214) 744-3200
(214) 744-3202 fax

ATTORNEYS FOR DEBTOR, ALAN
SEVADJIAN, AND EDWARD
SEVADJIAN